CARSON et al. v. COMMERCIAL NAT. BANK OF INDEPENDENCE, KAN., et al.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1900.)

No. 1,361.

APPEAL AND ERROR—RECORD—QUESTIONS PRESENTED.

An assignment of error based on the refusal of an instruction submitting to the jury a question of fraudulent intent in including in a mortgage certain items of indebtedness of a third party to the mortgagee raises no question which can be considered, where the bill of exceptions does not set out the evidence, but merely gives its substance, and contains a recital that there was evidence tending to show that such indebtedness had previously been assumed by the mortgagor, and that there was no evidence tending to show that its inclusion was with any fraudulent purpose.

In Error to the Circuit Court of the United States for the District of Kansas.

W. H. Rossington (Charles Blood Smith and Clifford Histed, on the brief), for plaintiffs in error.

W. C. Perry and N. T. Guernsey, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This case was before this court on a former occasion, and is reported under the following title: Commercial National Bank of Independence, Kansas, v. Pirie, 49 U. S. App. 596, 27 C. C. A. 171, 82 Fed. 799. The former writ of error was prosecuted by the defendants in the trial court, while on the present occasion the writ of error is prosecuted by the plaintiffs in that court; the second trial having resulted in a verdict in favor of the Commercial National Bank and George T. Guernsey, who were the defendants below, and are the defendants in error here.

Inasmuch as the nature of the controversy and the facts out of which it arose are fully stated in our former opinion, we deem it unnecessary to restate them, but refer to what was said in that behalf on the former occasion.

The second trial of the case was conducted in substantial conformity with the views of this court as expressed in its former opinion. The action being in trover for the conversion of personal property, and not a suit by the plaintiffs below to recover the purchase price of goods by them sold, it was necessary for the plaintiffs below to show a fraud entitling them to rescind the contract of sale; and there was no evidence of fraud, other than a fraud consisting in the purchase of the goods with a preconceived intent on the part of the purchaser, R. T. Webb, not to pay for the same. To this effect the trial court charged the jury on the second trial, and such direction was entirely proper, because no fraudulent representations were made when the property in controversy was purchased of the plaintiffs as this court formerly held in Bank v. Pirie, supra. If the right to rescind on the ground that the goods were purchased with a preconceived intent not to pay for them was established, the next issue to be determined was whether either of the defendants (that is to say, whether the Commercial National  •
Bank or George T. Guernsey, both of whom held mortgages on the goods) was a bona fide purchaser; and this inquiry, as a matter of course, was only relevant in the event that the plaintiffs first established their right to rescind the contract of sale on the ground last above stated. This view was also adopted by the trial judge on the second trial.

With respect to the issue whether the defendants below were bona fide purchasers of the goods from Webb, the original vendee, the trial judge instructed the jury, in substance, that the Commercial National Bank could not be regarded as a bona fide purchaser, because the mortgage on the goods which was executed in its favor by Webb on June 10, 1892, was given for a pre-existing indebtedness, and because the bank, when it received that mortgage, gave no new or additional consideration. This instruction reduced the issues before the jury, on the assumption that the jury found that the plaintiffs were entitled to rescind the contract of sale, to the single question whether Guernsey was a bona fide purchaser under the mortgage executed in his favor contemporaneously with the mortgage executed in favor of the bank; and with respect to this question the trial court charged, in substance, that the jury might hold that Guernsey was not a bona fide purchaser, for either one of two reasons: First, if the jury believed that he paid or advanced no new consideration to Webb at the time the mortgage in his favor was executed; or, second, if they believed that Guernsey entered into a fraudulent conspiracy with Webb of the kind and character testified to by Webb on the second trial. These issues as to whether the mortgage in favor of Guernsey was made to secure simply a pre-existing indebtedness, and as to whether he had entered into a conspiracy with Webb to obtain goods from the plaintiff and not pay for them, were fully and fairly submitted to the jury by the instruc-

tions of the trial court. Relative to this subject the charge of the court was as follows:

"So far as Guernsey personally is concerned, he claims that he was required by Webb to pay him about $700 in order to secure his mortgage, and that, having done so, his old notes and the cash payments amounted to $5,000, for which he took a new note, payable on demand. Now, if this were done as claimed by Guernsey, and were done innocently and in good faith on his part, he would be a bona fide mortgagee for a valuable consideration, and the defendants would be entitled to a verdict. If, however, it was not done in good faith, but Guernsey, on the contrary, knew of the fraud practiced upon the plaintiffs, or if there was any fraudulent combination between Webb and Guernsey by which Webb was to have any secret profit in the transaction, or to receive secret payments of parts of the proceeds which should go to his creditors, then Guernsey would not be a mortgagee in good faith, whether he paid the $700 or not; or if Webb, as claimed by him, repaid to Guernsey the $700 mentioned, and this was done before the plaintiffs demanded the goods of defendants, Guernsey would not be an innocent mortgagee for value. If there was at any time prior to the giving of the mortgage a private understanding or agreement between Webb and Guernsey that, if the former got into financial difficulties, he should put his property into the hands of Guernsey to defeat any of his creditors, and that he and Guernsey were thereafter to divide the profits of such transaction, and if the mortgage to Guernsey was the result of such understanding or agreement, Guernsey's mortgage would be fraudulent and void."

Furthermore the trial court instructed the jury as follows:

"If you believe from the evidence that at the time of the execution of the mortgage to Guernsey the stock of goods and merchandise in the store was of different classes, and easily separable, and more than sufficient to secure the amount of debt then due Guernsey, and you further find that Webb executed said mortgage to Guernsey and obtained the payment of money from him with a direct intent to defraud, hinder, and delay his other creditors, and that Guernsey knew at the time of said fraudulent purpose and design on the part of Webb, and sought to aid him by the payment of said money, then and in that event Guernsey did not become a bona fide purchaser or mortgagee of said goods, for value, and could not hold the same as against the right of the plaintiffs to reclaim them."

We think, therefore, that the issue as to whether Guernsey could assert the rights of a bona fide purchaser, as against the plaintiffs below, who are also the plaintiffs in error here, was fully and fairly submitted to the jury, under instructions of which the plaintiffs in error are not entitled to complain.

The testimony on the second trial disclosed that the mortgage executed by Webb in favor of the Commercial National Bank, which was for the sum of $8,229.28, embraced two items; one of them being a certificate of deposit for the sum of $1,500, held by the last-named bank, that had been issued by the Cherryvale National Bank, of which Webb was the president, and the other being an overdraft of $1,729.28, which the Cherryvale National Bank owed to the Commercial National Bank. There was testimony tending to show that Webb had orally agreed to pay to the Commercial National Bank all of the indebtedness that might at any time be due to it from the Cherryvale National Bank, and the bill of exceptions, which does not set out the testimony in full, but merely recites the substance of the evidence and what it tended to show, states, in effect, that the two items of indebtedness last mentioned were valid debts, and justly due to the Commercial National Bank, and that there

was no evidence in the case which tended to show that the inclusion of the two items of indebtedness aforesaid in the mortgage executed by Webb in favor of the Commercial National Bank was done for the purpose or with the intention of either hindering, delaying, or defrauding Webb's creditors. The point is made on the present appeal, and it seems to be the only one on which much reliance is placed, that the inclusion of these two items of indebtedness in the bank's mortgage rendered it fraudulent, and that the court should have instructed the jury, as it was asked to do, that if these items of indebtedness were knowingly included in the bank's mortgage, and this was done either to hinder, delay, or defraud Webb's creditors, it rendered both of the mortgages—the one in favor of Guernsey, as well as the one in favor of the bank—fraudulent and void, because both were executed at the same time, as a part of the same transaction. The difficulty that has been encountered in sustaining this contention is found in the bill of exceptions, in which it is recited that there was evidence showing that prior to the execution of the mortgage Webb had orally agreed to become individually responsible for all the indebtedness of his bank to the Commercial National Bank, and in which the trial court states definitely that there was no evidence that the two items of indebtedness were included in the mortgage for any fraudulent purpose. This court, as a matter of course, is bound by the statement of the trial court as to what the evidence before that court was, and as to what the evidence tended to show and did not show. Inasmuch as the evidence is not reported in full, and the parties saw fit to settle a bill of exceptions containing such statements relative to the effect of the evidence as we have before quoted, we are perforce bound thereby. It must accordingly be assumed to be true that the two items of indebtedness due from the Cherryvale National Bank to the Commercial National Bank were included in the latter's mortgage, because Webb had obligated himself to pay them by an oral agreement, and because both he and the mortgagee understood when the mortgage was executed that he was legally bound to pay them. This, we think, is the interpretation which must be placed on the bill of exceptions; and, accepting such to be the fact, the plaintiffs in error have no reason to complain of the refusal of their instruction, the substance of which we have stated above. The trial court was not bound to submit to the decision of the jury the issue relative to the intent with which the bank's mortgage was made to cover the two debts of the Cherryvale National Bank, if, as it certifies in the bill of exceptions, there was no evidence that it was done for any wrongful or fraudulent purpose, and if the fact be that Webb had made these debts his own by an oral agreement before the mortgage was executed. The rule seems to be that the fact that a mortgage is given for a larger sum than is actually due does not in itself render it fraudulent, without reference to the motives of the parties thereto. It is merely a badge of fraud, which may be explained, and, if explained consistently with honesty and fair dealing, will not impair the security taken. Jones, Chat. Mortg. § 92, and cases there cited. In the present case it appears that the

"padding of the mortgage," so termed, was explained to the satisfaction of the trial court, and that there was no evidence tending to show an improper motive. We are of opinion that the case was tried below on correct lines, so far as the present record discloses, and that nothing therein contained would warrant this court in disturbing the judgment. It is accordingly affirmed.