### POOLER v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. January 21, 1904.)

#### No. 471.

**1. CRIMINAL LAW—PRACTICE OF FEDERAL COURTS—SENTENCE.**

The rule applied that federal courts, in matters of proceeding on error, follow the rules of the common law, without regard to the practice of the state courts.

**2. SAME—MAKING AND USING FALSE PENSION VOUCHER—CONSTRUCTION OF STATUTE.**

While Rev. St. § 4746, as amended by Act July 7, 1898, c. 578, 30 Stat. 718 [U. S. Comp. St. 1901, p. 3279], expressly covers the offense of making, or aiding or assisting to make, any false voucher concerning a claim for pension, it does not cover the offense of using such a voucher, which comes within the terms of section 5438 [U. S. Comp. St. 1901, p. 3674], providing that it shall be an offense if any one "makes, uses or causes to be made or used" any false voucher for the purpose of obtaining the payment of a false claim against the United States; and where, as is permissible, an indictment charges defendant with having made and used such a false voucher, it is sustainable under the latter section, and, upon a general verdict of guilty, which is presumed to find true everything alleged, the punishment prescribed by the latter section may be imposed.

**3. INDICTMENT—DUPLICITY.**

In the federal courts, duplicity in an indictment cannot be taken advantage of on either a general demurrer, or a motion in arrest of judgment.

**4. PENSIONS—PROCUREMENT BY FRAUD—LEGAL PROCEEDINGS AGAINST PENSIONER.**

The provision of Act Dec. 21, 1893, c. 3, 28 Stat. 18 [U. S. Comp. St. 1901, p. 3270], that a pension "shall be deemed and held by all officers of the United States to be a vested right in the grantee," and that payment thereof shall not be withheld or suspended until the Commissioner of Pensions, after a hearing, shall decide to annul or modify the decision by which it was granted, applies only to action by executive officers, and does not affect the right of the United States to proceed through the courts, either civilly or criminally.

**5. SAME—PROOF OF GRANTING—DEPARTMENT RECORDS.**

The records of the Pension Office are admissible in evidence, equally with the certificate issued, to prove the granting of a pension.

**6. SAME—INDICTMENT FOR MAKING AND USING FALSE VOUCHER—DESCRIPTION OF CERTIFICATE.**

In an indictment charging the defendant with having made and used a voucher to obtain payment of a pension, in which he falsely averred that

---

¶ 1. See Courts, vol. 13, Cent. Dig. § 937.

he was the identical person named in a pension certificate, it is not necessary to set out such certificate by its tenor.

**7. INDICTMENT—DESCRIPTION OF OFFENSE—USE OF PARTICIPIAL FORM.**
An indictment for a misdemeanor is not bad because it uses the participial form, as by charging that defendant committed the offense "by then and there executing and presenting" a false voucher to obtain payment of a pension.

In Error to the District Court of the United States for the District of Maine.

David D. Stewart, for plaintiff in error.
Isaac W. Dyer, U. S. Atty.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. Daniel H. Pooler was indicted, convicted, and sentenced in and by the District Court for the District of Maine, and thereupon took out this writ of error. The record contains a demurrer to the indictment, which is general; a motion in arrest of judgment, which is general, except that it specifies that the alleged pension certificate hereafter referred to was not set out in hæc verba. There is also a bill of exceptions, which apparently raises three distinct propositions. The assignment of errors also objects that the court passed sentence on Pooler prior to the disposition of the proceedings against him by this court. Except in these particulars, the record is very general; and the brief for the plaintiff in error does not quite comply with our rule 24 (90 Fed. lxiii, 31 C. C. A. lxiii), which requires that it should open with a concise abstract of the case, "presenting succinctly the questions involved in the manner in which they are raised," with, next in order, "a specification of the errors relied on," setting out "separately and particularly each error asserted." Notwithstanding this, we think we have apprehended the precise points intended by the plaintiff in error.

We will first lay aside the proposition denying the duty of the District Court to pass sentence pending a writ of error, or an application therefor. While the necessity of doing this may well be considered as subject to the grave objections stated by the learned counsel for the plaintiff in error, yet the practice in the federal courts in this respect is that of the common law, and has been uniform since the first federal judiciary act was passed. It cannot now be questioned. Indeed, it may well be doubted whether, in view of article 7 of the amendments to the Constitution, prohibiting the re-examination of facts tried by a jury "otherwise than according to the rules of the common law," even Congress has power, in this respect, to make any radical change. It is settled, by so long a line of authorities that it would be superfluous to refer to them, that in this particular the federal courts proceed according to the common law, in the sense in which the expression is used in this amendment to the Constitution, and give no consideration to any local practice of the courts of the state of Maine or of any other state.

On searching through the record, including the demurrer, the motion in arrest of judgment, and the bill of exceptions, and also the briefs of counsel, the main propositions which we understand are in issue are as follows:

(1) That the records of the Pension Office, or a copy thereof, were exhibited in evidence in lieu of the alleged pension certificate.

(2) That the conviction was under section 5438 of the Revised Statutes [U. S. Comp. St. 1901, p. 3674], which, so far as the offense alleged is concerned, is claimed to have been repealed by the act of July 7, 1898, c. 578, 30 Stat. 718 [U. S. Comp. St. 1901, p. 3279].

(3) That there is neither allegation nor proof that prior to the indictment there had been any proceedings in accordance with the requirements of the act of December 21, 1893, c. 3, 28 Stat. 18 [U. S. Comp. St. 1901, p. 3270], which we will refer to more particularly hereafter.

(4) That the alleged pension certificate referred to in the count which we will soon quote should have been set out by its tenor.

The indictment contains four counts. It is stated by counsel that counts 1 and 3 were abandoned, and that the United States proceeded only on counts 2 and 4. We find nothing in the record supporting these propositions, and, as the demurrer was to the entire indictment, the motion in arrest of judgment was also to the entire indictment, and the sentence was a general one, not beyond what was permissible in case of a conviction on a single count, it will be sufficient if it is established that any count meets all the objections raised by the plaintiff in error. We are satisfied that the second count does, and therefore we herewith insert it at length:

"2. And the grand jurors aforesaid, upon their oath aforesaid, do further present that said Daniel H. Pooler, on the fourth day of December, in the year of our Lord nineteen hundred and one, at Augusta, in the said District of Maine, for the purpose then and there of obtaining and aiding to obtain the payment of a claim upon and against the government of the United States by an officer in the civil service of the said United States, to wit, by the then pension agent at Augusta, aforesaid, then and there authorized by law to receive and pay the same as by law directed, to wit, a claim for an invalid pension, and which pension he, the said Daniel H. Pooler, then and there claimed to be due him under pension certificate numbered eight hundred forty-three thousand six hundred and one (843,601) as the identical person named therein, to wit, as Daniel R. Hodsdon, who served in Company D, Fifth Regiment, Maine Volunteers, in the War of the Rebellion, and which said claim was then and there false, fictitious and fraudulent, as he, the said Daniel H. Pooler, then and there well knew, in this, that in said claim the said Daniel H. Pooler averred that he was the identical person named in pension certificate numbered eight hundred forty-three thousand six hundred and one (843,601), dated the twenty-eighth day of January, in the year of our Lord eighteen hundred and ninety-three, who served in Company D, Fifth Regiment, Maine Volunteers, when in truth and in fact he was not the identical person named in the pension certificate as aforesaid, who served in Company D, as aforesaid, in his own name or in the name of Daniel R. Hodsdon, as he, the said Daniel H. Pooler, at the time of making said claim, then and there well knew—did make and use and cause to be made and used a certain false voucher in the words and figures following, to wit:—

A                                    INVALID                                    A

Be it known, That I, Daniel R. Hodsdon, do solemnly swear that I am the identical person named in pension certificate No. 843,601, dated 28 day of Jany, 1893, now in my possession; that I served in Company D, 5″ Regiment, Me.

Volunteers; that my name is inscribed on the rolls of the Augusta Agency, at the rate of 12 dollars per month.

† That I have not been employed or paid in the Army, Navy, or Marine Service of the United States from (1) 4 day of Sept., 1901, to the present time; that I am entitled to the pension described in this voucher; that I have not forfeited my right, title, or interest therein; and that my present post-office address is W. Palmyra, County of Somerset, State of Maine.

DANIEL R. HODSDON.<br>(Pensioner's signature.)<br>(Signature must be written letter for letter<br>as it is written in the pension certificate.)

(If pensioner signs by mark,
two witnesses who can write.)
FLORA E. FRENCH.

**Officer must make the contents of the affidavit fully known to the pensioner before signing or swearing.**

**The pension certificate must be exhibited to the magistrate when this voucher is executed.**

STATE OF MAINE,
COUNTY OF SOMERSET, ss.

Subscribed and sworn to before me this 4th day of Dec. 1901, and I certify that the pensioner, above named, has this day exhibited to me his pension certificate, above described, and was fully identified as the pensioner named therein, and that he signed the following duplicate receipts in my presence.

(Magistrate's signature)   T. F. FRENCH.
(Official character)   4. C. P. M.
(P. O. address)   *W. Palmyra, Maine.*

(The magistrate must certify to
any erasures or alterations.)

**The pensioner will sign these receipts in the presence of the magistrate.**

$36   DEC. 4, 1901.

*Received of* SELDON CONNOR, *U. S. Pension Agent at Augusta, Me.*, Thirty-six 100 dollars by check No. 461,613, dated Dec. 9, 1901, being for 3 months' and     days' pension due me on pension certificate from the 4 day of Sept., 1901, to the 4 day of Dec., 1901, for which I have signed duplicate receipts.

DANIEL R. HODSDON.

(Witness who can write.)                    (Sign name as above.)
FLORA E. FRENCH.

*In the left-hand margin is written the following:*

ASSISTANT TREASURER,
    *Boston, Mass.*
cher is worthless if executed prior to the last date specified in the receipt.
    Original.

---

*In the right-hand margin is written the following:* This voucher is worthless if executed prior to the last date specified in the

---

which then and there contained a fraudulent and fictitious statement, as he, the said Daniel H. Pooler, then and there well knew, in this, that in said voucher said Daniel H. Pooler averred that he was the identical person named in pension certificate numbered eight hundred forty-three thousand six hundred and one (843,601), dated the twenty-eighth day of January, in the year of our Lord eighteen hundred and ninety-three, who served in Company D, Fifth Regiment, Maine Volunteers, when in truth and in fact, he was not the identical person named in the pension certificate as aforesaid, in his own name or in the name of Daniel R. Hodsdon, as he, the said Daniel H. Pooler, at the time of making said claim, then and there knew, against the peace and dignity of the said United States and contrary to the form of the statute of the said United States in such case made and provided."

The main contention seems to be the proposition we have numbered 2, to the effect that a conviction under section 5438 of the Revised Statutes [U. S. Comp. St. 1901, p. 3674] cannot be maintained. Various statements were made by the parties with reference to proceedings in the District Court, indicating that the court and the United States had in view only that section; but ordinarily this would not be of great consequence, if the indictment is sustainable under any provision of law other than that section. In that event, there would not ordinarily be a reversal, or, if there were a reversal, it would be simply for the purpose of imposing the proper sentence called for by the indictment. It is not necessary, however, to search through the record with the view of establishing the proposition that the proceedings of the District Court were under section 5438, because the sentence imposed cannot be otherwise sustained. But, as we have said, we regard the second count as good under that provision of the Revised Statutes.

The proposition of the plaintiff in error is that, so far as the offense covered by the indictment is concerned, section 5438 has been, by the force of implication, repealed by the act of July 7, 1898, c. 578, 30 Stat. 718 [U. S. Comp. St. 1901, p. 3279]. This act is expressed to be amendatory of section 4746 of the Revised Statutes. The penalty which the court imposed was authorized by section 5438, namely, imprisonment at hard labor for one year, while the act of 1898 does not provide for hard labor, and also permits imprisonment for a nominal period of even a day. Therefore it is too evident to need discussion that, so far as the same offense is specified by each of the two statutes, Congress in 1898 enacted leniency, so that the later statute necessarily to that extent takes the place of the earlier. Therefore the question is whether the subject-matter of the count which we have extracted is covered by the act of 1898.

The history of this legislation prior to the act of 1898 is explained in Edgington v. United States, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467. Not only on the face of section 4746, was it a very narrow statute, but as construed in Edgington v. United States, at page 363, 164 U. S., at page 72, 17 Sup. Ct., 41 L. Ed. 467, it was so limited that it was applicable only to the offense of procuring another person to commit a crime. The amendment of 1898 is plainly of a very special character, as will appear when we come to examine it; so that it and section 5438 cannot be said to cover, "in whole or in part, the same matter," as said in United States v. Greathouse, 166 U. S. 601, 605, 17 Sup. Ct. 701, 41 L. Ed. 1130. Therefore, even if, as there reaffirmed, repeals by implication were not favored, there would be no ground for maintaining that the newer statute could be regarded as a code covering the same ground as the older.

Starting, however, with the explanation of section 4746 made in Edgington v. United States, to the effect that it was applicable only to the offense of procuring another person to commit a crime, which class of offenses is clearly not in the contemplation of the count which we have extracted, it will be found that the amendatory act of 1898 broadens out in that respect only to a very limited extent. Some minor amendments appear in the latter part of it, with reference to the Secretary of the Interior, and broadening out with regard to

127 F.—33

powers of attorney and certificates of acknowledgment. This act also enlarges the maximum term of imprisonment from three years to five years, but prohibits imposing both a fine and imprisonment. All these amendments, however, are plainly irrelevant. The only amendments requiring consideration are found in the opening portion of the act of 1898, which reads as follows: "Every person who knowingly or wilfully makes or aids, or assists in the making, or in any wise procures the making or presentation of any false or fraudulent affidavit, declaration, certificate, voucher, or paper or writing purporting to be such," and so forth. The words "declaration," "certificate," "voucher," "or paper or writing purporting to be such," are new, but need not be discussed in the present case. The words "makes or aids, or assists in the making, or" are also new. These so far depart from the purpose of section 4746, as described in Edgington v. United States, that they do not relate to the procuring of a crime by another person; and they impose a penalty directly on the individual who himself prepares the false or fraudulent paper, or assists therein. Therefore, if the count which we have extracted related only to the making of the fraudulent voucher which it covers, this judgment would necessarily be reversed for the reasons we have stated, and the case go back for the imposition of a proper penalty under the act of 1898. But while the count covers that offense, it is not limited to it.

It is necessary on this proposition to be careful to distinguish the statutes in question from each other. The mind of makers of statutes against forgery and counterfeiting were drawn originally to persons who pass forged bills or counterfeit coins; but, in the progress of legislation, in order to strike at the root of the evil, penalties were imposed on those who make forged bills or counterfeit coins, although they may have had no intention of uttering the same, but merely of delivering them as merchandise in gross amounts to persons who did intend to utter. The forger or counterfeiter who merely forges a circulating note or makes a counterfeit coin commits an offense entirely distinct from one who utters either, or who makes and utters. Therefore, while the second count charges the plaintiff in error with both making and using the fraudulent voucher, yet he stands with persons concerned in circulating forged notes or counterfeit coins, in a distinct class from one who merely makes. Consequently, while he might, perhaps, have been described simply as a maker, and thus have been indicted under the act of 1898, yet, inasmuch as he is indicted as a user as well as a maker, that act does not bar a proceeding against him under section 5438, which covers one who "makes, uses, or causes to be made or used." With whatever else this count charges, it does charge that the plaintiff in error did use an alleged false voucher, so that, so far as the specific word "use" is concerned, the indictment can be sustained under section 5438 of the Revised Statutes, but cannot be under the act of 1898.

According to a method of criminal pleading which is much in practice, the charge that the plaintiff in error did both make and use does not involve duplicity. This has been applied to some extent even in capital cases. Anderson v. United States, 170 U. S. 481, 18 Sup. Ct. 689, 42 L. Ed. 1116. Even if, under the peculiar condition of the

statutes by which the person making is chargeable under the act of 1898, while the person using is chargeable under section 5438 of the Revised Statutes, this count could be objected to as multifarious and involving duplicity, yet, according to the settled practice of the federal courts, this fact could not be taken advantage of on either a general demurrer or a motion in arrest of judgment. The cases on this point are so numerous that it is hardly necessary to cite them, but we will refer to Connors v. United States, 158 U. S. 408, 411, 15 Sup. Ct. 951, 39 L. Ed. 1033. Also, as there stated, such an objection may be met at any stage of pleadings by section 1025 of the Revised Statutes [U. S. Comp. St. 1901, p. 720]. Therefore, as, according to the settled rules of the federal courts, a general verdict of guilty is presumed to find to be true everything alleged in an indictment, and in each of its counts, no objection can be maintained by reason of any of the propositions made to us, arising out of the fact that the sentence imposed in this case was under section 5438.

Another statutory objection is made by the plaintiff in error. He calls our attention to the following provision of the act approved on December 21, 1893, c. 3, 28 Stat. 18 [U. S. Comp. St. 1901, p. 3270] :

"That any pension heretofore, or that may hereafter be granted to any applicant therefor under any law of the United States authorizing the granting and payment of pensions, on application made and adjudicated upon, shall be deemed and held by all officers of the United States to be a vested right in the grantee to that extent that payment thereof shall not be withheld or suspended until, after due notice to the grantee of not less than thirty days, the Commissioner of Pensions, after hearing all the evidence, shall decide to annul, vacate, modify, or set aside the decision upon which such pension was granted. Such notice to grantee must contain a full and true statement of any charges or allegations upon which such decision granting such pension shall be sought to be in any manner disturbed or modified."

The plaintiff in error maintains that this statute gave him a vested right in the pension to which the indictment in this case relates, of so fixed and specific a character that all proceedings against him in reference thereto, whether on the criminal or civil side of the judicial courts of the United States, are barred until action has been taken by the Commissioner of Pensions as provided therein. So far as this indictment is concerned, it would be a sufficient answer that it does not allege that any pension was fraudulently obtained, and that it is to be construed as alleging only that Pooler, the plaintiff in error, fraudulently represented himself to be the identical person—that is to. say, one Hodsdon—named in the pension certificate referred to. But as the point is made both on this writ of error, and also on a writ of error now pending before us, asking a reversal of the judgment in a civil suit between the same parties, we may as well dispose of it here.

This legislation is found in the body of an act, the general purpose of which was to supply urgent deficiencies in appropriations; and, therefore, like much legislation tacked to statutes of that character, it is crude. Its letter, in some respects, sustains the position taken by the plaintiff in error. On the one hand, notwithstanding the method of its enactment, the court is bound to give effect to its provisions so far as they are clear, and, on the other hand, notwithstanding the mere letter, it must give effect to what was the legislative intent as

gathered from the statute and from the surrounding circumstances, especially if the latter are of a general and positive character.   Looking, therefore, at the statute from the usual point of view from which legislation is construed, we are of the opinion that the position of the plaintiff in error in reference thereto cannot be sustained.

If construed as claimed by him, it would prohibit the Attorney General and all his assistants, including the attorney of the United States for any district, from commencing or prosecuting any suit of any kind which questioned the just right of the person to whom a pension has been awarded, until there had been action by the Commissioner of Pensions, after notice of hearing.   Not only would this construction prohibit any department from moving in the courts to question the pension, but it would prohibit any recovery of payments made to the pensioner prior to the action of the Commissioner, no matter how gross the fraud.   What is more serious, it would give the Commissioner primarily absolute and exclusive jurisdiction over all questions of the validity of pensions, and would, in some cases temporarily, and in others permanently, bar the United States from availing themselves of the common remedy for canceling fraudulent transactions to which all their citizens are entitled.   It would at the outset, and in some cases absolutely and always, shut them out from their own judicial tribunals with reference to all substantial questions as to the validity of pensions, and from all the judicial appliances for ascertaining the truth and enforcing rights, and remit them, as well as the pensioner himself, to the Commissioner of Pensions, with no adequate facilities for either. The punishment for every fraud, no matter how gross, under any form of criminal proceedings, would thus be postponed, and perhaps effectually barred.

Such a construction, of course, is unendurable, and not to be accepted, unless compulsory.   That it need not be accepted is quite plain from the history of the statute as shown in Lochren v. Long, 6 App. D. C. 486.   That this legislation grew out of the case of the pension of Judge Charles D. Long, and the action of the Commissioner of Pensions in reference thereto, is quite apparent.   However that may be, it is plain, from Lochren v. Long, that the Pension Office had, previous to the act in question, exercised the power and practice of vacating pensions, and especially of modifying them.   Thereupon, notwithstanding the crude phraseology of this statute, by which its mere letter carries it beyond any reasonable purpose, it has its place in the general legislation about pensions, and is fully satisfied by holding that it applies only to executive officers, including especially the Commissioner of Pensions.   In this view, the Court of Appeals for the District of Columbia said in Lochren v. Long, page 511:

"Presumably to meet complaints prevalent concerning the action of the Pension Office in suspending and reducing pensions, the following provision was inserted in the appropriation act of December 21, 1893."

The court then cited the legislation in question.   The opinion continued, at page 512:

"In this statute, for the first time, the pension is recognized as a vested right, and then to an extent only that prevents its summary suspension or abrogation."

Thus, by the words "only" and "summary," the court limited the force of the statute to the proceedings in the Pension Office. While, perhaps, it could not be limited merely to the officials of the Pension Office, and while, perhaps, the court did not quite mean that, yet these extracts from its opinion, including especially what was said about meeting complaints concerning the action of the Pension Office, and the words "only" and "summary," put it beyond question that the court regarded this legislation as restricted to the acts of executive officers of the character referred to in the citations we have made. It is true that the expressions cited are only dicta, but they undoubtedly reflect the individual opinions of the eminent justices who united in the decision; and they receive our concurrence, as stating a construction of this legislation which we are at liberty to accept for the purpose of avoiding the violent conclusions and the most exceptional results which would otherwise follow.

Only one other statutory question comes before us, and that is involved in the first of the main propositions which we have said are in issue. The bill of exceptions states that the United States put in evidence, in lieu of the original pension certificate, "certain records relating to the same," which records, it further states, were to be copied as a part of the case. We do not find them in the transcript before us; but this is apparently of no consequence, as the only point seems to be that anything offered in lieu of the certificate was of a secondary character, and so not admissible.

We pass by the fact that the pension certificate is referred to in the statutes only incidentally, and is in its nature incidental, while the records of the Pension Office, like other records of the great executive departments, are fundamental, contemplated by law, and positively required by the regulations established under title 11, c. 5, §§ 470–474, Rev. St. [U. S. Comp. St. 1901, pp. 267–269]. The former might be destroyed or lost without serious detriment, while confusion would follow the destruction of the latter. Independently of this, it is common practice to offer in evidence quite indiscriminately either the departmental records, or the certificates authorized by law setting out the substance of those records. Section 882 of the Revised Statutes [U. S. Comp. St. 1901, p. 669] provides for the use of transcripts of departmental "books, records, papers, or documents," wherever the originals are relevant. Inasmuch as the records of the Pension Office are required by law, they are, of course, on settled rules, evidence of what they properly contain; and that they properly contain the facts of the granting of a pension, and of the issuing of a certificate thereof, if the certificate is essential, cannot be disputed. That in this particular the courts follow the common practice with reference to copies of departmental records appears from Ballew v. United States, 160 U. S. 187, 189, 191, 16 Sup. Ct. 263, 40 L. Ed. 388; and we think the court below was justified in adhering to it.

The remaining main proposition is that the pension certificate should have been set out by its tenor. The general rule is that, unless there is a special reason therefor, a written instrument may be described by its legal effect. Bishop's Criminal Procedure (4th Ed.) 214. The only exceptions, according to the ordinary rules of pleading, are where the

instrument relates to the very gist and pith of the offense. In this case the fraudulent voucher is such gist and pith, and the pension certificate is only a fact necessary to be averred as leading up to it. There is no allegation that the certificate was fraudulently obtained, but only that there was a false personification in connection with the voucher set out in the count which we have extracted. In this particular the analogy to a counterfeit note of a national banking association is perfect. Where a person is accused of counterfeiting a note, the note must, of course, be set out by its tenor; but an allegation giving the substance of the authorization, or certificate of authorization, of the association, is all that is required for that. It is enough to say that the proposition made by the plaintiff in error on this point is not sustained by the practice, and that, if it ever should be approved, it would lead to a system of criminal pleadings which would be intolerable for its mass and detail. It is not necessary to advert to authorities, but it is convenient to cite Durland v. United States, 161 U. S. 306, 315, 16 Sup. Ct. 508, 40 L. Ed. 709, as in harmony with the practical result which we have reached in this particular.

The plaintiff in error also makes some objections of a minor character to the allegations found in each of the counts of the indictment, all of which would require for misdemeanors extremely strict rules, for which he gives us no support by any citation of authorities. The first is that there is no allegation that the pension certificate to which the indictment relates was ever issued by the United States, or that the United States was ever liable to pay a dollar under it to the defendant or to anybody, and that no proof was offered on either of these issues. Whether proof of that character was offered is not before us, because this could be brought into the record only by the bill of exceptions, which makes no statement on the point. Under the circumstances, we are conclusively bound to presume that it was offered so far as necessary.

We have said enough to show that the issuing of the certificate was not necessarily a matter of substance, so that this objection, to be complete, should deny that there is any allegation that any pension was granted. That, however, the various counts of the indictment are sufficient in this respect, under section 1025 of the Revised Statutes [U. S. Comp. St. 1901, p. 720], as interpreted by the Supreme Court in sundry points, is too clear to require further observation. Indeed, looking at the fact that this is simply a misdemeanor, we are satisfied that the granting of a pension and the issuing of a certificate are necessarily implied in what is alleged, which is all that could be required on any reasonable rules of criminal pleading; and this necessarily covers the legal consequence of the liability of the United States.

The next proposition is that some of the allegations in the indictment are in the participial form—as, for example, in those portions of the various counts which use the words "by then and there executing and presenting." It would be enough to say that this does not appear in the second count, but, for the reasons stated with reference to the propositions last discussed, this form of allegation is clearly sufficient in the federal courts in misdemeanors, and also is in harmony with the common practice in all the courts. Wharton's Precedents of

Indictments (2d Ed.) forms (216) for assault and battery, (221) for assault and inciting a dog to bite, (529) for false pretenses, and many others that might be stated.

We believe we have covered the propositions made to us, and, with reference to all of them, we find no error in the record.

Inasmuch as the sentence in this case was permissible under section 5418, and also under section 5479, of the Revised Statutes [U. S. Comp. St. 1901, pp. 3666, 3696], we are not required to determine whether or not, on the allegations of the various counts of the indictment, either of them should be held to have been laid under either of those sections.

The judgment of the District Court is affirmed.