## MORGAN v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1906. Rehearing Denied September 3, 1906.)

### No. 2,281.

1. INDICTMENT—DUPLICITY IN INDICTMENT—MOTION IN ARREST.

An objection to an indictment on the ground of duplicity cannot be raised for the first time after verdict by motion in arrest of judgment.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indictment and Information, § 648.]

2. SAME—DUPLICITY—PREJUDICE.

Where, in a prosecution for cutting timber from the public domain, defendant was not prejudiced by the fact that the indictment charged that he cut the timber with intent unlawfully to export and with intent to dispose of the same, the conviction could not be set aside because of such duplicity under Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720], providing that no indictment shall be deemed insufficient or the proceedings under it affected by any defect in matter of form which does not tend to prejudice defendant.

3. BILL OF EXCEPTIONS—INSTRUCTIONS—REVIEW.

Instructions given in a criminal case cannot be reviewed on a writ of error unless brought into the record by a bill of exceptions signed by the trial judge; a mere certificate of the clerk that he has annexed to the record and transmitted to the court a copy of all the instructions given to the jury and filed in the case being insufficient.

4. PUBLIC LANDS—CUTTING TIMBER—STATUTES—REPEAL.

Rev. St. § 2461 [U. S. Comp. St. 1901, p. 1527], prohibits the cutting of timber on purchased or reserved lands of the United States, the wanton destruction of such timber, its removal from such lands, except by authority of a competent officer, and for use in the navy, the cutting of timber from any other lands of the United States and with intent to export, dispose of, use, or employ the same in any manner whatsoever other than the use of the navy, and the removal of the timber with like intent, and imposes punishment for violation by a fine and imprisonment. Act June 3, 1878, c. 151, 20 Stat. 89, was extended to all public land states by Act August 4, 1892, c. 375, 27 Stat. 348 [U. S. Comp. St. 1901, p. 1545]. Section 4, 20 Stat. 90 [U. S. Comp. St. 1901, p. 1529], declared that it should be unlawful to cut, procure to be cut, or wantonly destroy any timber on lands of the United States, etc., and that any person violating the same should be guilty of a misdemeanor, and on conviction should be fined, provided that the section should not prevent the cutting of timber for mining and agricultural purposes, and section 5, 20 Stat. 90 [U. S. Comp. St. 1901. p. 1530], provided that any person prosecuted for violation of Rev. St. § 2461 [U. S. Comp. St. 1901, p. 1527], might be relieved by paying $2.50 per acre for lands from which he cut timber. Held, that such acts repealed so much of section 2461 as related to the cutting or removing of timber from the public domain with intent to export or dispose of the same, together with the penalty of imprisonment.

5. SAME—APPEAL—CORRECTION OF SENTENCE.

Where, in a prosecution for cutting timber from government land with intent to export or dispose of the same, the jury might have found under the indictment that defendant cut the timber innocently with intent to use and employ the same for permissible building, agriculture, mining, or other domestic purposes, the Circuit Court of Appeals could not, where the sentence to a fine and imprisonment was illegal because the provision of the statute providing for imprisonment had been repealed, correct the sentence by eliminating the portion providing for

*imprisonment; it being impossible to say that the jury found defendant guilty of cutting timber with intent to export and dispose of the same.*

In Error to the District Court of the United States for the District of Colorado.

W. G. Simonson (J. E. Simonson, on the brief), for plaintiff in error.

Earl M. Cranston (George P. Steele, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. The charge laid in the indictment against the defendant is that on a given date, in the district of Colorado, he "unlawfully did cut and cause and procure to be cut" certain timber upon public lands situate in the state of Colorado, "with intent then and there unlawfully to export, dispose of, use and employ said timber in manner other than for the use of the navy of the United States," against the peace and dignity, etc. The sufficiency of the indictment was not challenged by demurrer or otherwise, but a plea of not guilty was entered, a jury trial had, a verdict of guilty rendered, and the value of the timber cut fixed at $95. Afterwards a motion in arrest of judgment was filed for the reason, as alleged, that the indictment in charging defendant with cutting timber with the intent to export and with the intent to dispose of the same charged two different offenses in one count. This motion was overruled by the trial court, and defendant was sentenced to 10 days' imprisonment and to pay a fine of $285. By this writ of error he challenges the action of the trial court in overruling his motion in arrest, in giving certain instructions to the jury, and in imposing the sentence of imprisonment upon him.

It was too late to raise the question of duplicity after verdict by motion in arrest of judgment. Bishop's New Criminal Procedure, vol. 1, §§ 442, 443; United States v. Bayaud (C. C.) 16 Fed. 376; Pooler v. United States, 127 Fed. 509, 515, 62 C. C. A. 307; Connors v. United States, 158 U. S. 408, 411, 15 Sup. Ct. 951, 39 L. Ed. 1033. Nothing appears in the record before us to show that the substantial rights of the accused were prejudiced by the joinder of the two intents complained of in the motion in arrest of judgment. Accordingly, applying the provisions of section 1025, Rev. St. [U. S. Comp. St. 1901, p. 720], the judgment as rendered should not be disturbed. The clerk of the trial court, after certifying to the record proper, further certifies that he has annexed and transmitted to this court a copy of all instructions given to the jury filed in the cause. There is no bill of exceptions showing either the evidence taken or the charge, or instructions given by the court to the jury. The certificate by the clerk as to the instructions is of no avail. The only way to preserve or make them part of the record is by bill of exceptions. The certificate of the trial judge, and not of the clerk, is required for that purpose. We therefore cannot consider the errors assigned on

the instructions refused. Case v. Hall, 94 Fed. 300, 36 C. C. A. 259; Carson v. Commercial Nat. Bank, 104 Fed. 733, 44 C. C. A. 184.

The indictment was indorsed as found under section 2461, Rev. St. [U. S. Comp. St. 1901, p. 1527]. That section reads as follows:

"If any person shall cut, or cause or procure to be cut, or aid, assist, or be employed in cutting, or shall wantonly destroy, or cause or procure to be wantonly destroyed. or aid, assist, or be employed in wantonly destroying any live-oak or red-cedar trees, or other timber standing, growing, or being on any lands of the United States, which, in pursuance of any law passed, or hereafter to be passed, have been reserved or purchased for the use of the United States, for supplying or furnishing therefrom timber for the navy of the United States, or if any person shall remove, or cause or procure to be removed, or aid. or assist. or be employed in removing from any such lands which have been reserved or purchased, any live-oak or red-cedar trees, or other timber, unless duly authorized so to do, by order in writing, of a competent officer, and for the use of the navy of the United States; or if any person shall cut. or cause or procure to be cut, or aid, or assist, or be employed in cutting any live-oak or red-cedar trees or other timber, from any other lands of the United States, acquired, or hereafter to be acquired, with intent to export, dispose of, use, or employ the same in any manner whatsoever, other than for the use of the navy of the United States; every such person shall pay a fine not less than triple the value of the trees or timber so cut, destroyed, or removed, and shall be imprisoned not exceeding twelve months."

The contention of defendant's counsel is that this section was repealed so far as concerns the imposition of imprisonment as a part of the punishment for the offense charged against him by Act June 3, 1878, c. 151, 20 Stat. 89, as amended by Act August 4, 1892, c. 375, 27 Stat. 348 [U. S. Comp. St. 1901, p. 1545], extending its provisions to all public land states.

Section 4, Act 1878, 20 Stat. 90 [U. S. Comp. St. 1901, p. 1529], is as follows:

"After the passage of this act it shall be unlawful to cut, or cause or procure to be cut, or wantonly destroy, any timber growing on any lands of the United States, in said states and territory or remove, or cause to be removed, any timber from said public lands, with intent to export or dispose of the same; * * * and any person violating the provisions of this section shall be guilty of a misdemeanor, and on conviction, shall be fined for every such offense a sum not less than one hundred nor more than one thousand dollars: provided, that nothing herein contained shall prevent any miner or agriculturist from clearing his land in the ordinary working of his mining claim, or preparing his farm for tillage, or from taking the timber necessary to support his improvements, or the taking of timber for the use of the United States."

Section 5 provides:

"That any person prosecuted in said states and territories for violating section two thousand four hundred and sixty-one of the Revised Statutes of the United States who is not prosecuted for cutting timber for export from the United States, may be relieved from further prosecution and liability therefor upon payment, into the court wherein said action is pending, of the sum of two dollars and fifty cents per acre, for all lands on which he shall have cut or caused to be cut, timber or removed or caused to be removed the same."

Section 6 provides "that all acts and parts of acts inconsistent with the provisions of this act are hereby repealed."

Section 2461, 5 Rev. St. [U. S. Comp. St. 1901, p. 1527], which was enacted in 1831, denounces several offenses generally described as follows: (1) The cutting of timber on lands of the United States purchased or reserved for the use of the navy of the United States. (2) The wanton destruction of such timber. (3) The removal of timber from such lands unless by authority of a competent officer and for the use of the navy. (4) The cutting of timber from any other lands of the United States with intent to export, dispose of, use or employ the same in any manner whatsoever other than for the use of the navy. (5) The removal of timber last referred to with like intent.

The fourth and fifth offenses just referred to prohibit the cutting or removal of timber from any of the public lands with the intent specified. The growing agricultural and mining industries of some of the western states, in course of time, seem to have suggested a relaxation of that rule of prohibition. Accordingly, by the provisions of Act June 3, 1878, c. 150, 20 Stat. 88, citizens of the United States and residents of the states of Colorado and Nevada, and of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, and Montana, and other mineral districts of the United States, were permitted to cut and use the timber growing on mineral lands of the United States "for building, agricultural, mining or other domestic purposes," under and subject to such rules and regulations as the Secretary of the Interior might prescribe for its protection. Congress seems to have thought that the last-mentioned act enlarging the uses which might be made of timber taken from public lands required some modification of section 2461. Accordingly the second Act June 3, 1878, c. 151 (20 Stat. 89), was adopted. It originally concerned and affected the states of California, Oregon, Nevada, and Washington Territory only, but by the act of August 4, 1892, as already seen, its provisions were extended to all public land states, and as so extended was in force at the time the offense involved in the cause before us was committed. By the provisions of the last two mentioned acts the scope and operation of the three offenses first denounced by section 2461 were extended from cutting, removing, or wanton destruction of timber growing on lands purchased or reserved by the United States for the uses of the navy, so as to embrace within their denunciation the cutting, removing, or wanton destruction of timber growing on any of the public lands of the United States.

They denounce as an offense (not included in section 2461) the transportation of such timber or lumber manufactured therefrom by owners, officers, or agents of any vessel or railroad. They also deal with the subject of the two offenses last denounced by section 2461. They prohibit the cutting or removing of timber from the public lands, but limit the intent required to make the act of cutting or removal criminal to that of exporting or disposing of the same. They excise from section 2461 the intent "to use or employ the same in any manner whatsoever, other than for the use of the navy of the United States." Until the act of 1892 extended the provisions of the

second act of 1878 to all public land states, it is obvious that the latter act did not repeal any of the provisions of section 2461 so far as Colorado and other states or territories not embraced within its provisions were concerned. They remained subject to the provisions of that section as modified or affected by the provisions of the first Act of June 3, 1878. But after the passage of the act of 1892 it is equally clear that many of the provisions of section 2461, so far as concerned Colorado and other states and territories not originally mentioned in the act of 1878, were materially modified. It is not necessary for the purposes of this opinion to hold that section 2461 was totally repealed by the act of 1878 as expanded by the act of 1892, but it certainly was repealed in part. That act, as expanded, contains provisions totally inconsistent with those of section 2461. It modifies the intent necessary to make cutting or removing of timber from the public lands an offense. Before its enactment an intent "to use or employ the same in any manner whatsoever other than for the use of the navy" constituted an offense. The cutting or removing of timber from the public lands with almost any intent constituted a crime. Afterwards the intent was narrowly limited to a purpose "to export or dispose of the same." This change was doubtless made in view of the expanded use of timber permitted by the first act of June 3, 1878, and also by the proviso of section 4 of the second act of June 3, 1878, which made provision for still further expanded use.

Not only so, but the penalty prescribed for the offense of cutting or removing timber "with intent to export or dispose of," by the act of 1878 was different from that prescribed by section 2461. By the latter section fine and imprisonment were imposed upon the offender. By the act of 1878 a fine only was imposed. Moreover, section 5 of the act of 1878 shows that Congress intended to differentiate the "cutting of timber for export from the United States" from all other provisions of section 2461. This appears by not permitting persons guilty of that offense to do what persons guilty of other offenses denounced by section 2461 might do—pay into court $2.50 for each acre of land from which cutting had been done and thereby secure relief from prosecution. A statute which changes the elements of an existing statutory offense or the punishment or penalties prescribed therefor, by implication operates as a repeal pro tanto of the former statute. Endlich on Interpretation of Statutes, §§ 238, 239; Lewis' Sutherland, Stat. Con. vol. 1 (2d Ed.) §§ 251, 252. This is specially true where by the amended acts the penalty for an offense is reduced. People v. Tisdale, 57 Cal. 104; Commonwealth v. Kimball, 21 Pick. (Mass.) 373; Commonwealth v. Davis, 11 Gray (Mass.) 48. So far, therefore, as section 2461 relates to the cutting or removing of timber from the public lands with intent to export or dispose of the same, it was repealed by the second act of June 3, 1878, as expanded by the act of August 4, 1892.

Shortly after the passage of the acts of 1878 Attorney General Devens addressed a letter to the then Secretary of the Interior, Hon. Carl Schurz, concerning certain rules and regulations for the protec-

148 F.—13

tion of timber made by the Secretary in connection with section 2461, Rev. St., and the two Acts of 1878. He says:

"Section 4 of the longer of these two acts merely singles out the offenses described in section 2461—that of cutting or removing timber 'with intent to export or dispose of it' and affixes to it a new and different penalty."

"Section 5 simply allows all persons prosecuted for the cutting or removal of timber, 'except those who cut or remove with intent to export,' to relieve themselves from the penalties prescribed in section 2461 by the payment at the rate of $2.50 an acre of the land on which the trespasses were committed. * * * Those who cut or remove 'with intent to export' being expressly excluded from the benefit of the provision. * * * It is a necessary implication from these special provisions that the former law continues in force in respect to all cases to which they do not apply." Opinions of Attorneys General, vol. 16, p. 189.

This opinion, placing an interpretation upon legislation or executive purposes, is entitled to respectful and persuasive consideration, and, as it is in strict accord with our view of the law, we more unhesitatingly adopt that view. The defendant was indicted for cutting timber "with intent then and there unlawfully to export, dispose of, use and employ said timber in a manner other than for use of the navy of the United States." The pleader, in drafting the indictment, undoubtedly had in mind section 2461 only, and noted that section on the back of the indictment. Nevertheless, if the indictment is good under the act of 1878, under which alone it could have been found, the fact just stated would be of no consequence.

The indictment charged more than was necessary to constitute an offense under the act of 1878. Whether this fact, if seasonably availed of, would have subjected the indictment to assault, need not now be considered. The judgment must be reversed because the punishment of imprisonment imposed upon the defendant was in excess of that authorized by the act of 1878.

We are unable to conform to the suggestion of the United States Attorney that we should correct the sentence by eliminating from it the unwarranted imprisonment, for the reason that it is impossible to say that the jury found defendant guilty of cutting timber with intent to export or dispose of it. The jury might have found under the charge laid in the indictment that the defendant cut the timber innocently, with intent to use and employ the same for permissible building, agriculture, mining, or other domestic purposes. If so, the verdict and sentence did him a great wrong. In this state of necessary doubt as to the meaning of the verdict, it is impossible to conform the punishment to the provisions of the act of 1878.

The judgment must be reversed, with instructions to grant a new trial.