U. S. v. Medina.

[No. 1195, August 31, 1909.]

# THE UNITED STATES OF AMERICA, Appellee, v. JESUS MARIA MEDINA, Appellant.

### SYLLABUS (BY THE COURT.)

1. An indictment framed in the terms of the statute is sufficient only whereby the statutory language the defendant is put upon fair notice of the charge against him.

2. Under U. S. Rev. St., sec. 4746, as amended by the Act of July 7th, 1898, which penalizes the making of a false or fraudulent affidavit, it is not sufficient simply to allege that the affidavit was false. There must be a clear averment of the respects in which it is false, equivalent to the assignment in perjury cases.

3. A name pleaded as Munnison and proved as Munnicon is idem sonans and there is no variance.

4. Under U. S. Rev. St., sec. 4746, as amended by the Act of July 7th, 1898, which subjects to punishment one who knowingly certifies, when not true, that a witness has been sworn to an affidavit to be used in a pension case, administering the oath immediately before the taking down of the statement thereunder, equally with administering it after taking down such such statement, is swearing the witness to such affidavit within the statute.

5. It was error, therefore, for the trial court to reject testimony for the defendant tending to show that he administered the oath to the witness and the latter thereupon having taken such oath immediately dictated his statement to defendant, such testimony being material as showing a compliance with the law and this even though the signing by the witness may have been postponed by illness to the next day.

Appeal from the First Judicial District Court before John R. McFie, Associate Justice. Reversed.

A. B. Renehan and T. B. Catron for Appellant.

U. S. v. Medina.

Where a writing is of the gist of the offense, it must be given verbatim. Whitney v. State, 10 Ind. 404; 2 Bishop's New Cr. Proc. secs. 406-408, 789; 1 Bishop's New Cr. Proc. sec. 559, p. 342 et seq.; Pooler v. United States, 127 Fed. 518; McNair v. The People, 89 Ill. 442; U. S. v. Bennett, 16 Blatch. C. C. Rep. 338; 19 U. S. Stat. at Large 90; Rosen v. U. S., 161 U. S. 38, 39; U. S. v. Denicke, 35 Fed 408; People v. Reed, 70 Cal. 529; Wallace v. State, 11 Lea 542; State v. Owen, 73 Mo. 440; 19 Cyc. 1400, g; Commonwealth v. Harrison, 30 S. W. 1009; U. S. v. Mason, 12 Blatch. 497; Faust v. U. S., 163 U. S. 41 L. ed. 234; Potter v. U. S., 155 U. S. 445.

Doing or omitting to do a thing knowingly and willfully implies not only a knowledge of the thing but a determination with a bad intent to do it or omit doing it. Felton v. U. S., 96 U. S. 702; secs. 4746, 5208, Rev. St. U. S.; Potter v. U. S., 155 U. S., L. ed. 217; Evans v. U. S., 153 U. S. L. ed. 830; Spurr v. U. S., L. ed. 1153; 11 Enc. P. & P. 202, 205; U. S. v. Adler, 49 Fed. 733; U. S. v. Britton, 107 U. S. 661; State v. Brady, 100 Ia. 204; Wood v. State, 48 Ga. 297; Ratterman v. Ingalls, 48 Oh., St. 483; Railroad Co. v. Goetz, etc. Mfg. Co., 51 Ill. App. 151; United States v. Allen, 47 Fed. 698; United States v. Graves, 53 Fed. 634; Hix v. People, 159 Ill. 382.

The court erred in singling out circumstantial evidence as competent to establish guilt and in not charging that it had equal force to establish innocence. Adams v. Roberts, 2 How. 496; 11 Enc. P. & P.

D. J. LEAHY, U. S. Attorney, and S. B. DAVIS, Jr., Assistant U. S. Attorney, for Appellee.

A variance in the spelling where the sound is preserved will not vitiate the indictment. Vol 2, Bishop's New Criminal Proc., secs. 406-408; U. S. v. Mason, 12 Blatch. 497; Wharton's Criminal Law 222; Vol. 2, Enc. P. & P. 551; Franklin v. State, 52 Ala. 414; Aaron v. State, 37 Ala. 106; McLean on Crim. Law, secs. 798, 799.

In the trial of criminal cases where it is necessary to show guilty knowledge, motive or intent on the part

of the accused, evidence may be given of other similar offenses in proof of such guilty knowledge or intent. State v. Twitty, 9 N. C., 2 Hawks 248; Wharton Criminal Ev., sec. 38; Underhill Crim. Ev., sec. 38; Felton v. U. S., 96 U. S. 702; People v. Molineaux, 62 L. R. A. 357, note; vol. 1, Wigmore on Ev., sec. 300 et seq.

If a man intentionally adopts certain conduct in certain circumstances known to him, and the conduct is forbidden by law, under those circumstances he intentionally breaks the law in the only sense in which law considers intent. Ellis v. U. S., 206 U. S. 246.

Authority of notary public. In re Donnelly, 5 Fed. Rep. 783.

The indictment need not have pointed out the precise falsity or fraudulency of the affidavit. Secs. 1025, 4746, Rev. St. U. S.; Pooler v. U. S., 127 Fed. Rep. 509; U. S. v. Rhodes, 30 Fed. Rep. 431; U. S. v. Doherty, 25 Fed. Rep. 88; Hume v. U. S., 118 Fed. Rep. 689.

The facts are stated in the opinion.

## OPINION OF THE COURT.

POPE, J.—Jesus M. Medina, the appellant, was indicted upon three counts for a violation of U. S. Rev. St., Sec. 4746, as amended by the Act of July 7th, 1898. All three counts were demurred to, the demurrer being sustained to the first count and overruled as to the remaining counts. A trial was had resulting in a verdict of guilty upon the second and third counts. After adverse ruling upon motion for a new trial the court imposed a sentence of eighteen months upon each of these counts, the terms to run successively. The case thereupon came into this court by appeal.

The controlling statute is as follows: "That every person who knowingly or wilfully makes or aids, or assists in the making, or in any wise procures the making or presentation of any false or fraudulent affidavit, declaration, certificate, voucher, or paper or writing purporting to be such, concerning any claim for pension or payment thereof, or pertaining to any other matter within the jurisdiction of the Commissioner of Pensions

or of the Secretary of the Interior, * * * and every person, before whom any declaration, affidavit, voucher, or other paper or writing to be used in aid of the prosecution of any claim for pension or bounty land or payment thereof purports to have been executed who shall knowingly certify that the declarant, affiant, or witness named in such declaration, affidavit, voucher, or other paper or writing personally appeared before him and was sworn, thereto, or acknowledged the execution thereof, when, in fact, such declarant, affiant, or witness did not personally appear before him or was not sworn thereto, or did not acknowledge the execution thereof, shall be punished by a fine not exceeding five hundred dollars, or by imprisonment for a term of not more than five years."

The second count charges the defendant with a violation of the last clause of the statute in that in a certain affidavit purporting to have been executed before him on August 5th, 1904, and being for use in aid of a certain pension claim, the defendant "unlawfully and knowingly did certify that the affiant named in said affidavit, to-wit, Rev. Ramon Medina, personally appeared before him the said Jesus M. Medina, and was sworn thereto, whereas in truth and in effect the said Rev. Ramon Medina did not so personally appear before him, the said Jesus M. Medina, and was not so sworn to the said affidavit as he, the said Jesus M. Medina, at the time of so certifying to said affidavit and writing then and there well knew."

The third count charges a violation of the first clause of the statute in that the defendant "did unlawfully, knowingly and wilfully make and aid and assist in the making of a certain false and fraudulent affidavit, the tenor of which is as follows: [then following in full the same affidavit involved in the second count], the said affidavit being then and there an affidavit concerning a claim for pension in the said affidavit mentioned and the said Jesus M. Medina at the time of making and aiding and assisting in the making of the said affidavit then and there well knowing the same to be false and fraudulent."

In dealing with the assignments of error we shall consider those urged against the third count first. It is

urged as against the conviction under the third count that the indictment fails to charge an offense in that it does not set forth the respect in which the affidavit was false. We are of opinion that this point is well taken. While the indictment follows the statute, it is, of course, well settled that this is sufficient only where the terms of the statute as pleaded put the defendant upon fair notice of the charge against him. As was said in Evans v. United States, 153 U. S. 584:

"The rule that an indictment is sufficient if the offense be charged in the words of the statute is limited to cases where the words of the statute themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."

To the same effect is Miller v. U. S., 136 Fed. 581, a prosecution under the statute here involved.

We cannot believe that an indictment charging the defendant simply with making a false affidavit is any more notice to him of what he is required to meet than an indictment charging him with having on the trial of a named cause simply sworn falsely. In the former case no less than in the latter, he is entitled to know what is the particular matter to which it is alleged he has sworn falsely. Lines of proof available to sustain one feature of his affidavit might be totally irrelevant to uphold others.

He is entitled to know definitely and specifically wherein his statement has been false. We find no authorities under the statute here involved directly ruling this point, but in all the indictments under the statute and appearing in the reports there seem without exception to be allegations specifying the particular false matter. Examples of these are found in United States v. Adler, 49 Fed. 733; United States v. Wood, 127 Fed. 172; Pooler v. United States, 127 Fed. 512. The third count of the indictment thus being in our judgment insufficient, we find it unnecessary to consider the remaining assignments of error so far as they affect only that count.

Coming now to the remaining assignments which affect both the second and third counts, it is alleged first,

U. S. v. Medina.

that there was a variance between the affidavit pleaded and that tendered in evidence and that the court erred in receiving it in evidence. The indictment sets up a writing in which is contained language to the effect that "the priest who performed the ceremony was the Reverend P. I. *Munnison, deceased.*" The affidavit tendered in evidence has the name *Munnicon* and this is the variance relied upon. We accept as correctly stating the law the contention of appellant that if the pleader sets out with unnecessary detail the instrument he purports to rely upon he is bound to prove it as laid, but that this duty is complied with when any variance which exists is merely literal, not making a word different in sense or grammar but being one in which sound and sense is in substance the same. A variance in the spelling where the sound is preserved will not vitiate. 2 Bish. New Crim. Proc., Sec. 406-408. A variance is not fatal if the names as alleged and proved have the same sound without doing violence to the letters found in the variant orthography. Franklin v. State, 52 Ala. 414. The question thus becomes one of the application of the rule of *idem sonans.* This latter is less strict where proper names are involved and where, as is apparently the case here, the name is foreign. In Faust v. United States, 163 U. S. 452, "Foust" and "Faust" were held *idem sonans.* An examination of some of the state cases there cited will show an even greater divergence than in the present case, as for instance, "Bubb" and "Bopp" from a German speaking section of Pennsylvania and "Penryne" and "Pennyrine" from Maryland. The Circuit Court of Appeals for the Fifth Circuit has even held "Krowder" and "Krower" within the rule. Alexis v. United States, 129 Fed. 60. A very full statement of the cases illustrative of the rule will be found in the note of Thormly v. Prentice, 100 Am. St. Rep. 317. Tested by the authorities we believe that there was here no substantial variance and that the affidavit was properly admitted.

A further assignment of error is based upon the rejection of certain testimony offered for the defence. Ramon Medina, whose affidavit formed the basis of the prosecution, testified as a witness for the government that the

contents of the affidavit were untrue; that while he signed the paper upon the request of a messenger purporting to come from defendant, he signed it in ignorance of its contents, not being acquainted with English; that he never appeared before the defendant in connection with the matter and was never sworn to it either before or after it was filled out. The defendant testified that the priest's affidavit, after the contents thereof had been dictated to him by the priest, was not then and there signed by the latter for the reason that he, the priest, was too sick to sign it and that he, the defendant, thereupon took it home with him and sent it back to the priest for signature the day following. He further testified that he first swore the priest as to the matters to be stated in the said affidavit, and then filled out the affidavit as he (the said Ramon Medina) was telling him, but this last testimony was stricken out on motion. A further question asked by the defendant as follows was not allowed:

"State whether or not before the said affidavit was filled out you administered an oath in respect to the same to Father Medina."

Likewise, one Meliton Armijo called for the defense testified as follows:

"Jesus M. Medina said to Father Medina that he, Jesus M. Medina, could fill out the blank for him (Father Medina) if he (Father Medina) would authorize him to do it, but before doing so he (Jesus M. Medina) would have to swear him (Father Medina) to what he was going to put into it and then the priest raised his hand."

At this point, before the completion of the statement of the witness, the answer as above given was stricken out as was an answer of the witness to the effect that Father Medina was sworn to the paper. Likewise, Carmel Lopez, a witness for the defendant, testified that "the paper was sworn to by the priest before it was filled out," which answer was likewise stricken. All of the foregoing was over defendant's objections and exceptions were properly noted. The question raised by the several rulings is the same: Was proof that the defendant administered the oath to the priest immediately before the affidavit was

written out in the latter's presence competent either by
way of complete defense or upon the question of motive,
or was it necessary, as held by the court below, that the
oath must have been administered after the paper was
filled out, to. escape the penalty of the statute? We
are of opinion that the former is the proper view. It
will be noted that the statute penalizes one who shall
on the making out of a paper before him, certify that
the party was sworn thereto when he ·was not. It does
not prescribe the order in which the oath shall be taken,
whether before or after the writing out of the affidavit.
True, the use of the word thereto in the latter part of
Sec. 4746, (as amended by the Act of July 7, 1898),
suggests the existence of a completed paper to which the
oath is taken. We think, however, that it is not the
paper that is the essence of the statute, but what the paper
contains. An oath thereto means an oath to the substance,
not the form. What the government seeks is a statement
in pension cases under the sanction of the oath and if this
is assured the purpose of the statute is met. We do not,
therefore, consider the use of the word "thereto" as sig-
nificant. Referable to a given state of facts, a witness whose
testimony is taken down by a court reporter is spoken of
as having sworn thereto, although the oath is administered
before he testified. In the case of a deposition a witness
is considered as having sworn thereto and yet the witness
in such cases has, as a matter of practice, almost invari-
ably sworn first and his narrative thereupon been taken
down by the notary or other officer and then signed by the
witness. Would it be contended in either of these last in-
stances that the witness had not taken the oath because
sworn before he testified? We cannot but believe that the
administering of the oath and the immediate writing out
of the statement under the dictation of the witness is a com-
pliance with the statute and this, even though the signature
of the witness and the·signing of the jurat may for some
sufficient reason, as here the sickness of the witness,
have been postponed until a subsequent date. It will
be remembered that the indictment is not for certify-
ing to a false date nor to a false place of the taking of

the affidavit, but for certifying that the witness was present when he was not, and that he took the oath when he did not. The tendered testimony tended to show both that the witness was present and that he was sworn and this, if believed by the jury as against the testimony of the government, justified defendant's acquittal. We do not deem it necessary to the determination of the case to consider the matter of intent, as involved in the fact that the statute imposes a penalty not simply upon one who certifies falsely, but one who *knowingly* certifies falsely. In the case as here of a sworn public officer performing an official act, we are, however, of opinion that the expressions of the Supreme Court of Wisconsin in Byrne v. State, 12 Wis. 519, 527, are highly relevant.

"They [the defendants] were obliged by law to act and to decide upon the qualifications of every person offering, as a duly qualified elector to vote at the polls at which they presided. When these qualifications were, by some proper method, called in question, and when so acting, the most that reason or justice could require of them was a *bona fide* effort to discharge their duties according to the best of their knowledge and ability; and if in so doing they committed an obvious but sincere mistake of the law or error of judgment, they are not criminally responsible therefor. The law only required of them true candor and sincerity, and it will only punish them for corruption and falsehood for acting contrary to their own sense of duty and the dictates of their own consciences. In this sense we understand the word 'knowingly' to be used in the statute: that is, knowing that their duty and the obligation of their oath commanded them to act otherwise. It is the wicked intent or corrupt motive which the laws punish as a crime, and it cannot be supposed that it was the intention of the Legislature, in this instant, to substitute for them the upright but misdirected efforts of the mind or judgment of one whose action was not voluntary but in obedience to the requirements of the law."

The judgment of the lower court is reversed with directions to quash the third count of the indictment and

to grant a new trial upon the second count of the indictment.

Cooley, A. J., and Mechem, A. J., not having heard the argument did not participate.