UNITED STATES v. NORTON (seven cases).

(District Court, E. D. Oklahoma. June 5, 1911.)

Nos. 515-521.

1. BANKS AND BANKING (§ 256*)—INDICTMENT AND INFORMATION (§ 125*)—
NATIONAL BANKS—OFFENSES BY OFFICERS. .
   Under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), which makes it
a criminal offense for any officer or agent of a national bank to make any
false entry in any book, report, or statement of the association, with in-
tent "to injure or defraud the association, * * * or to deceive any
officer of the association, or any agent appointed to examine the affairs
of any such association," the making of a false entry, accompanied by an
intent either to "injure or defraud" or to "deceive," as defined by the sec-
tion, constitutes an offense; and a count of an indictment which charges
that such a false entry was made with intent to injure or defraud, and
also with intent to deceive, charges two offenses, and is bad for duplicity.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 958–
964; Dec. Dig. § 256;* Indictment and Information, Cent. Dig. §§ 334–
400; Dec. Dig. § 125.*]

2. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFENSES BY OFFICERS
—MISAPPLICATION OF FUNDS. .
   An indictment under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497),
which charges that defendant, while an officer of a national bank, with
intent to injure or defraud the bank, unlawfully and willfully misapplied
and converted to his own use funds of the bank, by withdrawing money
therefrom upon a charge ticket, pursuant to which the amount was
charged to his account, is insufficient to charge an offense, in the absence
of averments showing that the bank was in fact defrauded, or a probabil-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ity that it would be defrauded, thereby, as that defendant was insolvent, and that the overdraft was not paid.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 973; Dec. Dig. § 257.*]

3. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFENSES BY OFFICERS —MISAPPLICATION OF FUNDS.

An indictment under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), which charges that defendant, while president of a national bank, with intent to injure and defraud the bank, unlawfully and willfully misapplied and converted to his own use, by paying to himself the amount of a draft drawn by a customer on a third party to whom the bank was not indebted, does not charge an offense; there being no averment that the drawee was not solvent, or of other facts showing that the draft which defendant caused the bank to cash was not collectible.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 973; Dec. Dig. § 257.*]

4. BANKS AND BANKING (§ 256*)—NATIONAL BANKS—OFFENSES BY OFFICERS —MISAPPLICATION OF FUNDS.

The fact alone that an officer of a national bank causes it to pay overdrafts, drawn by himself or other customers of the bank, or makes a loan without security, does not constitute an offense, under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497); nor does an indictment averring such facts charge an offense, because it further avers an intent to injure and defraud the bank.

[Ed. Note.—For other cases, see Banks and Banking. Cent. Dig. §§ 958–964; Dec. Dig. § 256.*]

Criminal prosecutions by the United States against William L. Norton. On motions to quash indictments. Motions sustained in part, and overruled in part.

William J. Gregg, U. S. Atty., and Frank Lee, Asst. U. S. Atty. Veasey & Rowland and Haff, Meservey, German & Michaels, for defendant.

CAMPBELL, District Judge. In each of the 7 above-numbered cases an indictment has been returned against the defendant, William L. Norton, the several indictments aggregating 42 counts, all relating to offenses under section 5209 of the Revised Statutes (U. S. Comp. St. 1901, p. 3497), covering offenses by officers and agents of national banks. Each count relates either to an alleged false entry, or misapplication or abstraction of the moneys, funds, and credits of the association. The indictments and counts which allege false entries are No. 515, all 3 counts; No. 516, the first 2 counts; No. 517, all 6 counts; No. 518, 7 counts; No. 519, first 2 counts; No. 521, first 2 counts. And those indictments and counts which allege misapplication are No. 516, the third count; No. 518, eighth and ninth counts; No. 520, all 10 counts; No. 521, the third count. Those which alleged abstraction are No. 521, fourth and fifth counts. Motions to quash have been filed in each case, attacking on various grounds each count of the respective indictments.

[1] We will first consider the motions as they relate to the false entry charges. The ground of the motions in this respect most strenuously urged by counsel for the defendant appears in the fourth para-

graph of the motion filed in No. 515, and may be taken as typical of similar contentions set up in the other·motions, and is as follows:

"That said indictment, and each and every count thereof, is defective and bad for duplicity, in that it purports to charge two or more offenses in each count; that is to say, said indictment alleges in each count that a false entry was made in a certain report to the Comptroller of the Currency by the defendant, with the intent on his part to injure and defraud the American National Bank of Bartlesville, and also that a false entry was made by the defendant in such report with the intent to deceive the board of directors and other officers of said banking association and any agent appointed and designated by the Comptroller of the Currency to examine into the affairs of said banking association, and also that a false entry was made by the defendant in such report with the intent to injure and defraud and deceive the officers of said banking association and any agent appointed and designated by the Comptroller of the Currency to examine into the affairs of said banking association, whereby the defendant is not advised of the offense with which he is sought to be charged."

In each of the false entry counts, it is charged that the false entry involved was made—

"with the intent to injure and defraud the said banking association, and with the intent to deceive the board of directors and other officers of said banking association, and with the intent to deceive any·agent appointed and designated or thereafter to be appointed and designated by the Comptroller of the Currency to examine into the affairs of said banking association."

Section 5209 provides as follows:

"Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association, or who, without authority from the directors, issues or puts in circulation any of the notes of the association, or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree, or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association, and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

The persons coming within the purview of the statute are the officers and agents of national banks. Any one of those who either embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the bank, with intent to injure or defraud the association, or any other company, corporation, or individual, or with intent to deceive any of the officers of the bank, or any agent appointed to examine the affairs of the bank, offends against the statute. The embezzlement, abstraction, and misapplication condemned are each separate and distinct acts, which, when committed with either the intent to injure or defraud, or with the intent to deceive, mentioned in the statute, become separate and distinct offenses under its terms. The fourth act, which may become an offense under the statute, when coupled with either one of the intents mentioned, is that of issuing or putting in circulation any of the notes of the association without

authority from the directors. The fifth is the issuing or putting forth, without such authority, any certificate of deposit; sixth, the drawing of any order or bill of exchange without such authority; seventh, the making of any acceptance without such authority; eighth, signing any note, bond, etc., without such authority; ninth, the making of any false entry in any book, report, or statement of the association, with either of the intents mentioned.

It is therefore seen that there are nine distinct acts, each of which, when coupled with the intent to injure or defraud, or with the intent to deceive, mentioned in the statute, becomes a separate and distinct offense. The making of the false entry is not in itself what the statute condemns; but it is the making of it with any one of the several intents mentioned therein. The gravamen of the offense is not the mere making of the false entry; but coupled with the act there must be one of the intents condemned by the statute. A false entry made by mistake, or one knowingly made, but with no intent to injure, defraud, or deceive in any of the respects condemned by the statute, would not be an offense against the statute. "A statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act, because the common law does not." Bishop on Stat. Crimes, § 132. As, therefore, it is not every false entry, even when knowingly made, but only such as is concurrent with some particular intent named in the statute, which is condemned, it may, I think, be properly said that the criminal intent is the gravamen of each offense contemplated by section 5209. Evans v. United States, 153 U. S., loc. cit. 594, 14 Sup. Ct. 934, 38 L. Ed. 830.

It is an elementary rule of pleading that an indictment or information must not in the same count charge the defendant with two or more distinct and substantive offenses, and in case it does so it is bad for duplicity if the offenses are inherently repugnant, or are not different stages in one transaction, or involve different punishments. 22 Cyc. 376, and cases cited. It follows that an indictment which in one and the same count charges an officer or agent of the bank with embezzling *and* abstracting its funds, or with abstracting *and* misapplying its funds, or with embezzling its funds *and* making a false entry in a book or report of the association, or combining in the same count the charge of the doing of any two or more of the nine distinct acts mentioned, would clearly be duplicitous, and on a proper and timely objection would have to be quashed. But in the counts now under consideration there is but the single act of false entry charged. This act, however, as we have seen, is not condemned by the statute, except it be coupled with the concurrent intent either to injure or defraud *or* to deceive in the respects mentioned. The pleader, therefore, must charge, not only the act, but the intent. In this case he charges that the act was done both with intent to injure and defraud *and* to deceive, either one of which intents, coupled concurrently with the act, makes the act an offense. It is insisted by the defendant that this amounts to the joining of two distinct, substantive offenses in the same count, and, therefore, is duplicitous.

In the case of Billingsley v. United States (8th Circuit) 178 Fed., loc. cit. 659, 101 C. C. A. 471, it is said:

"There are apparently two separate intents contemplated by this section, either of which, when accompanying a forbidden act, constitutes an offense. One of them is the intent to 'injure or defraud,' and the other the intent to 'deceive.' The contention that there can be no offense in making a false entry with the intent to deceive an agent appointed to examine the affairs of the association, unless there be also the coexisting intent to injure or defraud the association, etc., seems to ignore the grammatical structure of the statute and the natural meaning of the language employed. Either the intent to injure or defraud, or the intent to deceive when accompanying the doing of the substantive act to which they appropriately pertain seem, according to the language employed, to constitute an offense. Any other construction would, in our opinion, give practical immunity to the making of a false entry with the intent to deceive, etc. [Citing U. S. v. Corbett, 215 U. S. 233, 30 Sup. Ct. 81, 54 L. Ed. 173.] If it constitutes no offense to make a false entry with intent to deceive an examiner, unless an intent actually exists to injure or defraud somebody, it would seem that much of the corrective purpose of the law can be thwarted."

Without reciting the authorities further, it is sufficient to say that the Billingsley Case, just cited, determines for this district that one and the same false entry may constitute two distinct and separate offenses; one when made with intent to injure and defraud, mentioned in the statute, and the other when made with intent to deceive, mentioned therein. And it will be noted that it is the intent, rather than the act, which the court considers the gravamen of the offense, for it says:

"There are apparently two separate *intents* contemplated by this section, *either* of which, when accompanying a forbidden act, constitutes an offense."

In other words, the intent, when accompanied by the act, constitutes an offense. This is clear when it is remembered that the offense in no way depends upon whether the act (the false entry) actually effects the injury, fraud, or deception intended. .

It follows that one and the same false entry may give rise to two distinct offenses, according as it may accompany either of the two concurrent intents mentioned, and when in one count of the indictment a false entry is charged as having been done with the intent to injure or defraud *and* with the intent to deceive, condemned by the statute, does it not clearly combine two distinct and separate offenses? That they might properly be pleaded in separate counts, each count reciting the same false entry as accompanying a different one of the intents, cannot be doubted. No case is cited by counsel where this question had been directly raised by demurrer on motion before trial, and as it has been held by the Circuit Court of Appeals for this circuit that it is too late to raise the question in arrest of judgment, after verdict (Morgan v. United States, 148 Fed. 189, 78 C. C. A. 323), expressions of the courts on the question in passing upon such motions cannot be said to be directly in point.

Counsel for the government says:

"It would be a new departure in criminal jurisprudence if the several intents with which an act was committed could each be subdivided and penal-

ized, especially when, as stated by Judge Sanborn in the above opinion, such several intents are all presumed upon the commission of an act."

But we have seen in the Billingsley Case, above cited, that, whether or not it be a "departure," it is the established construction of this section, so far as this circuit is concerned, so that the contention that the existence of the several intents constitutes but one offense, where there is but the one act, is not sound. Counsel for the government in his brief declares that he makes no contention that two distinct, independent offenses can be preferred in one count of an indictment, but admits that they cannot be so charged. In view of the construction of this statute, just noted, it would seem that this admission would, in effect, concede the defendant's contention.

It is contended for the government, however, that the pleading attacked has been approved and sustained by a long line of decisions. The case of United States v. Corbett, 215 U. S. 233, 30 Sup. Ct. 81, 54 L. Ed. 173, is relied upon, for the reason that it appears from the opinion that it was charged that the false entry involved was made with the double intent to injure and defraud and to deceive. It is not clearly stated whether this double intent was pleaded in one and the same count, or separately stated in different counts; but it is clear that, however that may have been, the question of duplicity now under consideration was neither raised by the motion nor the demurrer filed in that case, and it will not do to say, because the court may have passed without comment a feature of the pleading to which no objection was raised, that it therefore approved it, especially when, as said in the Morgan Case, supra, such question can only be raised before trial. And in this Corbett Case Justice White announces the doctrine that the construction of a statute in regard to which no question was raised will not prevent the determination, as an original question, as to how the statute should be construed in that particular when controverted in a subsequent case.

The recent case of United States v. Morse (C. C. A.) 174 Fed. 539, is cited. In the false entry counts in this case, as in the case at bar, the double intent to injure and defraud and to deceive was charged; but there is nothing in the case to indicate that this pleading was ever questioned prior to the trial, by motion or demurrer, and it is passed by the court without comment. So that, like the Corbett Case, supra, it cannot be taken as authority directly sustaining the pleading. It is further noted in this Morse Case that the court treated the act of misapplication charged in some of the counts, when accompanying the intent to injure and defraud the bank, as a separate and distinct offense from one wherein the same act of misapplication might accompany an intent to deceive the officers of the bank, etc. The court says:

"The allegation is plainly one charging the defendants with misapplication with intent to injure and defraud the bank, and the proof tended to establish the truth of the allegation, and not the intent 'to deceive any officer of the association or any agent appointed to examine the affairs of any such association.'"

The court, in its charge to the jury, told them it was necessary, in order to complete the crime of willful misapplication, that it should have been made with an intent on the part of the defendants to injure or defraud the bank, or any other person, *or to deceive any officer of the bank, etc.* This instruction was challenged by the defendant, because, as stated, it was neither charged nor proven that the misapplication was made with intent to deceive. The court then point out the fact that this instruction was given to the jury when the court was explaining generally. the meaning of the statute, and that the language quoted was a correct statement of its provisions, and that later, when dealing with the specific charges of misapplication, the court charged that the intent must be to injure or defraud the bank. But while the court was for this reason inclined to the belief that the instructions, taken altogether, had not misled the jury, it expresses a lingering doubt upon the subject, for it says:

"Per contra, we cannot wholly divest ourselves of the apprehension that the jury may have obtained a mistaken notion of the essentials of the offense, and may possibly have convicted the defendant upon the theory that the funds of the bank were misapplied with intent to deceive an officer of the bank or an agent of the government, and not with intent to injure and defraud, as alleged in the indictment. In a civil cause a theory resting upon a foundation so insubstantial could not be maintained; but where the liberty of a citizen is at stake the court should be clearly convinced that he has not been convicted under a mistaken interpretation of the law. If the language above quoted were the only portion of the charge upon which the defendant's argument is based, it would not be difficult to disregard it; but later on, when the court was explaining the misapplication counts relating to the ice transactions, he charged, after stating that, if the jury believed that the ice stock was purchased at grossly excessive prices. they might find that the amount paid in excess of the real values of said stock was a willful misapplication thereof, providing they also found 'that such misapplication was with the intent denounced by the statute.' It would have been more accurate had he said, 'with the intent charged in the indictment.' The intent denounced in the statute, as previously explained by the court. was (1) either to injure or defraud the bank. or (2) to deceive any officer of the bank or any agent appointed to examine its affairs. Is it not possible that the jury may have convicted the defendant. upon the counts in question. of an intent not charged against him in the indictment?"

The court then passes to a consideration of the false entry counts, and, finding them sufficient to sustain the conviction, regardless of the misapplication counts, the possible error of the court as to the latter counts is not regarded as having worked any substantial injustice to the defendant. But it is evident from the opinion that, had the error in the charge of the court as to the intents connected with the misapplication counts not been rendered negligible by the fact that the conviction was properly sustained on the false entry counts, the judgment would probably have been reversed.

United States v. Harper (C. C.) 33 Fed. 473. being the charge of Judge Jackson to the jury, is cited by the government as indicating that in this case the double intent to injure and defraud and to deceive is charged in each count. But an examination of a certified copy of the indictment, now before me, develops that the pleader in each false entry count only charged there the intent to defraud *or*

the intent to deceive, outlined in the statute, in no instance charging both in the same count.

Greenleaf on Evidence (13th Ed.) 18, is cited to the effect that:

"If several intents are comprised in one allegation in the indictment, any one of which, being consummated by the principal fact, would constitute the crime, the allegation is divisible; and proof of either of the intents, together with the act done, is sufficient."

It may be conceded that, had this question not been raised before trial, the jury would have been warranted in returning a verdict on any false entry count as to which the evidence showed the defendant knowingly made a false entry with any one of the several intents charged. It would not be necessary to prove all the intents charged. McKnight v. United States, 97 Fed. 216, 38 C. C. A. 115. But here the question is raised by a timely objection, a situation, so far as the court is informed, not heretofore presented by any reported case. The fact, as has been said, that in a number of cases where no timely objection was made the courts have passed such pleading without comment, cannot be relied upon as establishing its correctness, now that it is challenged. In a number of others, it appears the several intents were stated in separate counts. What, then, is the situation? The intent to injure and defraud and the intent to deceive are separate and distinct intents, either of which, when accompanying a forbidden act, constitutes an offense. The same act may accompany each intent, and thus the same act may give rise to several distinct offenses. It is conceded that two or more offenses should not be joined in one count. That is sought to be done here, and the motion to quash raises the question.

The case of Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, is cited as authority for this pleading. This case involved that section of the Revised Statutes prohibiting the false making, altering, forging, or counterfeiting, or causing to be made, etc., any deed, power of attorney, order, certificate, receipt, or other writing, for the purpose of obtaining or enabling another to obtain from the United States any sum of money. By the statute it is also prohibited to any person to knowingly transmit to or present at, or cause or procure to be transmitted or presented to any office or any officer of the government any of the writings mentioned in support of or in relation to any account or claim against the government, with intent to defraud it. The second count of the indictment charged, not only that the defendant did the things, and each of them, the doing of which, or either of which, the statute prohibited, but also that he caused the doing of such things and each of them. The question was raised in motion in arrest of judgment, and the court says:

"Was the count thus drawn so defective as to require the judgment upon it to be arrested?"

After discussing the question, the court say:

"We are of opinion that the objection to the second count upon the ground of duplicity was properly overruled. The evil that Congress intended to reach was the obtaining of money from the United States by means of fraud-

ulent deeds, powers of attorney, orders, certificates, receipts, or other writings. The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment at hard labor for a period of not less than five years nor more than ten years, or by imprisonment for not more than five years and a fine of not more than $1,000. We perceive no sound reason why the doing of the prohibited thing, in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused, who pleads not guilty to the charge contained in a single count; for a judgment on a general verdict of guilty upon that count will be a bar to any further prosecution in respect of any of the matters embraced by it."

Aside from the fact that the question was raised after trial, when objections for duplicity are too late, it is established by a long line of authorities that a charge of the doing of a thing and causing it to be done may properly be combined in one count. As said by the court:

"The evil that Congress intended to reach was the obtaining of money from the United States by means of fraudulent or forged writings and the statute was directed against certain defined modes of accomplishing this, either one of which, having the unlawful object in view, constituted a substantive crime under the statute."

Now the making or causing to be made of a forged or prohibited writing, and its utterance or publication as true, and its transmission or presentation to an officer of the government, may all be successive phases in one transaction by one person, as they were, in fact, in the Crain Case. In such case it is well established that the various successive acts may be charged in one count. But in the case at bar it cannot be said that the intent to injure or defraud the bank is in any way related to the intent to deceive. They may both exist in the mind of the accused when the false entry is made, but they are not successive phases or stages of one transaction. A false entry may be made to deceive any agent appointed to examine the affairs of the bank, without any intention to injure or defraud the bank, and in fact may be made under such circumstances as not to be in any way calculated to do so. The same entry may be made with the intent to injure and defraud the bank, and with no intent to deceive any officer appointed to examine the affairs of the bank, and under such circumstances as not to be in any way calculated to do so.

State v. Goodwin, 33 Kan. 538, 6 Pac. 899, involves the following statute:

"Every person who shall take away any female under the age of eighteen years from her father, mother, guardian or other person having legal charge of her person, without their consent, either for the purpose of prostitution or concubinage, shall upon conviction thereof, be punished by confinement and hard labor for the term of not exceeding five years."

The court said:

"The information charges that the female, Nannie Lawson, was taken away for prostitution and concubinage. In the information there is a joinder of two distinct felonies in one count. If the appellant took away the female

for the purpose of prostitution, under the circumstances alleged in the information, he would be guilty of one offense; but if he took her away for the purpose of concubinage, but not for prostitution, he would be guilty of another offense. If the appellant took the female away for the purpose of prostitution, he did so for the purpose of devoting her to infamous purposes; that is, of offering her body to indiscriminate intercourse with men. If he took her away for concubinage only, then his purpose was to cohabit with her in sexual commerce, without the authority of law or a legal marriage. Now, two or more offenses may, under proper circumstances, be joined in one information; but it must be in separate counts. Each count, as a general thing, should embrace one complete statement of a cause of action, and one count should not include distinct offenses—at least, distinct felonies. There are many prominent exceptions to this rule, but, as this case is not within the exceptions, they need not be noted. Wharton's Cr. Pl. and Pr. pp. 244–254; 1 Bishop on Cr. Pro. pp. 433–440."

To the same effect is State v. Gibson, 111 Mo. 92, 19 S. W. 980; Slocum v. People, 90 Ill. 274; Henderson v. People, 124 Ill. 607, 17 N. E. 68, 7 Am. St. Rep. 391.

Section 1024 of the Revised Statutes of the United States provides:

"When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment in separate counts." U. S. Comp. St. 1901, p. 720.

Here are two charges against the defendant for the same act, the false entry; each distinct intent charged constituting a separate offense. Billingsley Case, supra. Such charges may be joined under the statute in one indictment, *but in separate counts.*

Because no reported case is brought to the attention of the court, where, as to section 5209, this question has been raised before trial, as is done in the case at bar, it is considered at greater length than otherwise it would have been. It is concluded that the charges in the indictments under consideration are duplicitous, in that they each plead two separate and distinct offenses, and that the motion to quash as to such counts is therefore well taken.

The suggestion made by counsel for the government that to so hold is imposing an impossible standard of pleading upon the government is not sound, nor is it requiring such detail of pleading as is impracticable of proof. It is just as easy to plead the intent to injure or defraud in one count and the intent to deceive in another, both relating to the same act, and is a practice, in fact, commended by the authorities. In State v. Bailey, 50 Ohio St. 636, 36 N. E. 233, it is said:

"The authorities are quite uniform in maintaining the right of the prosecutor, where a single offense has been committed, to include a number of counts in one indictment, variously framed to meet possible contingencies that may arise in the introduction of evidence. Upon this subject, the following pertinent language is used by Wharton: 'Every cautious pleader will insert as many counts as will be necessary to provide for every possible contingency in the evidence, and this the law permits.' Beasley v. People, 89 Ill. 571; Com. v. Andrews, 132 Mass. 263; State v. Smith, 24 W. Va. 814; State v. Flye, 26 Me. 312. The law permits this multiplication of the counts in an indictment, where each states, though with variations of detail, the same offense, to prevent that failure of justice which might follow if the

prosecution should be confined to a single count, and the proof should vary from the allegations of that count in some essential particular. Upon the same principle, it would seem that where two similar and closely allied offenses arise from the same transaction, and each must be established, if at all, by substantially the same evidence, each should be permitted to be set forth, in separate counts, in the same indictment. People v. Sandman, 12 Hun (N. Y.) 167; State v. Hogan, R. M. Charlt. (Ga.) 474; State v. Fisher, 37 Kan. 404, 15 Pac. 606; Com. v. Ismahl, 134 Mass. 201; State v. Scott, 15 S. C. 434; Ker v. People, 110 Ill. 627 [51 Am. Rep. 706]; People v. Sweeney, 55 Mich. 586, 22 N. W. 50; Armstrong v. People, 70 N. Y. 38."

The following excerpts from reported cases controlling this court will aid in the determination of the questions here presented as to the misapplication and abstraction counts:

In United States v. Britton, 107 U. S. 668, 2 Sup. Ct. 523, 27 L. Ed. 520, it is said:

"It is true that it is possible for an officer of a banking association, with intent to defraud it, to misappropriate its funds in the purchase for its use of its own stock; but the count which avers such an act should also make other averments to show that the application was not merely the use of the money for the benefit of the association, forbidden by law, but a criminal misapplication by which it was possible that the association could be defrauded."

In the same case it is also said:

"The words 'willfully misapplied' are, so far as we know, new in statutes creating offenses, and they are not used in describing any offense at common law. They have no settled technical meaning, like the word 'embezzle,' as used in the statute, or the words 'steal, take, and carry away,' as used at common law. They do not, therefore, of themselves fully and clearly set forth every element of the offense charged. It would not be sufficient simply to aver that the defendant 'willfully misapplied' the funds of the association. That is well settled by the authorities we have already cited. There must be an averment to show how the application was made, and that it was an unlawful one."

In the case of Evans v. United States, 153 U. S., loc. cit. 587, 14 Sup. Ct. 936 (38 L. Ed. 830) it was said:

"Even in the cases of misdemeanors, the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged, not only that the former may know what he is called upon to meet, but that upon a plea of former acquittal or conviction the record may show with accuracy the exact offense to which the plea relates."

The Circuit Court of Appeals for this circuit, in Dow v. United States, 82 Fed. 904, 27 C. C. A. 140, criticising an instruction given by the trial court, said:

"From this broad statement upon the subject, given without restrictions or qualifications, the jury might well understand that in all cases the drawing of a check, when at the time the drawer had no funds to meet it, would be a fraud on part of the drawer, and the recognition of the check by the bank officials, by crediting it to the account of the holder, would constitute a criminal misapplication of the funds of the bank, yet it is apparent that in many cases such acts would not be justly open to the charge of fraud, and in no case could they constitute a criminal misapplication of the funds of the bank, unless the funds of the bank had been lessened thereby. In nearly all cases wherein overdrafts occur, checks are drawn on the bank when in fact the drawer at the time has no funds on deposit to meet the check; and yet

not all overdrafts are frauds, nor do the officers of the bank necessarily become participants in a fraud simply because they give recognition to checks drawn by their customers which are in fact overdrafts, because drawn upon the bank when the drawer had not funds therein to meet the checks. Of course, frauds and criminal misapplications of bank funds by the officials thereof may be committed by the recognition or payment of checks drawn on the bank when there are not funds to meet the same; but the criminal wrong, *including the intent*, must appear from all the facts surrounding the transaction, and cannot be inferred, as a matter of law, from the mere fact that when the check was drawn there were, not funds on deposit to meet the check: and the charge given the jury in this case on this subject must be held misleading and erroneous, because it is so broadly stated as to justify the jury in believing that the mere drawing of a check creating an overdraft is a fraud on the part of the drawer, and the payment thereof by the bank officers of necessity constitutes a fraudulent misapplication of the funds of the bank."

In the same case, discussing section 5209, the Circuit Court of Appeals said:

"The statute thus referred to, being section 5209 of the Revised Statutes, was before the Supreme Court for construction in the cases of U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. 512 [27 L. Ed. 520], and U. S. v. Northway, 120 U. S. 327, 7 Sup. Ct. 580 [30 L. Ed. 664], and it was therein held 'to be of the essence of the criminality of the misapplication that there should be a conversion of the funds to the use of the defendant, or some person other than the association, with intent to injure and defraud the association, or some other body corporate or natural person.' In the several counts in the indictments charging a misapplication of the funds of the Commercial National Bank it is averred that the misapplication was made with the intent to injure and defraud the association, meaning the national bank, and it is clear, under the ruling of the Supreme Court in the cases just cited, that the charges of misapplication contained in these indictments could not be made out unless it appeared, that the funds of the bank had been depleted, withdrawn, or diminished in some form by reason of the action of Dow, aided and abetted by McClurken and Miller. The jury were instructed that the fact that Miller received credit in his account on the books of the bank for checks drawn on that bank or on other banks constituted a flagrant misapplication of the funds of the Commercial Bank, within the meaning of section 5209: yet it is apparent that merely giving credit to Miller on the books of the bank for the amount of the checks did not lessen the funds held by the bank, nor in fact defraud the association, in any form. To complete a misapplication of the funds of the bank, it was necessary that some portion thereof should be withdrawn from the possession or control of the bank, or a conversion in some form should be made thereof, so that the bank would be deprived of the benefit thereof. It is not necessary in all cases that the money should be actually withdrawn from the bank. Thus if, by connivance between a bank official and a customer of the bank, the latter is allowed to draw checks on the bank, when the drawer has not the funds to meet the checks, and the same are given by the drawer to third parties, instead of getting the cash on the checks, have them credited up to their accounts in the bank, this completes the misapplication of the funds of the bank, because the bank has become bound for the payment of the sums thus credited to the third parties; and the result is just the same as though the holders of the checks had obtained the money thereon, and had subsequently deposited it to their credit In such cases the funds of the bank would be lessened, and thereby the criminal misapplication might be completed. If, however, the customer presents the checks himself, and has the same credited on his account, the crime of misapplication is not completed thereby, because the bank is not under legal obligation to pay out any of the amounts wrongfully credited to the customer, and may refuse to pay checks drawn against the inflated account, and may at any time charge back against the customer the amounts of the checks

upon which nothing was in fact realized by the bank. To complete the criminal misapplication of the bank funds in the supposed case, some sum must be paid by the bank to the customer, or to third parties on his order, or must be credited to third parties under such circumstances that the bank becomes bound for the payment thereof."

Now, taking up the misapplication counts: Without prolonging this opinion by reciting in detail the several particulars in which it is charged the third count in indictment No. 516 is bad, on a careful examination of it, in the light of the objections raised, I conclude that it substantially states a misapplication under section 5209.

[2] As to indictment No. 518: The eighth count of this indictment charges that on February 9, 1908, the defendant, as president of the association, with the intent to injure and defraud the association, and without the knowledge and consent of the board of directors, unlawfully, willfully, etc., misapplied and converted to his own use moneys, funds, and credits of the association in the sum of $8,000, by means of a charge ticket, which is set forth in full, from which it appears the defendant was charged upon the books of the association with $8,000 cash; that the payment to him was unlawful, in that the association was not indebted to him, and had no account with him, on which such payment was entitled to be made; that the repayment thereof was not secured, and that defendant had no right, title, or authority to the same, all of which he well knew. The effect of the transaction charged in this indictment is the same as if the defendant had permitted himself, or some other person, to whom the association was not indebted, to draw out of the funds, moneys, and credits of the association the sum of $8,000, in the shape of an overdraft, and charge the person so drawing it out therewith on the books of the bank. Presumably, in the absence of a charge to the contrary, the defendant is solvent and able to repay the $8,000 for which he stands indebted on the books of the bank. So far as the indictment shows, this amount may have been repaid to the association upon demand. How, then, can it be said that it appears from the facts alleged that it was likely, or even probable, that the bank would be injured or defrauded by the transaction? In the absence of such averments, the mere statement that the defendant intended to injure or defraud the bank is not sufficient.

It might be further suggested, also, that if the averment of this count were sufficient to bring the transaction within the condemnation of the statute, it probably would be more in the nature of an abstraction than a misapplication.

In the ninth count of indictment No. 518 it is charged that the defendant, without the consent of the board of directors, and with intent to injure and defraud the association, willfully misapplied $8,000 of the moneys, funds, and credits of the association by means of a charge ticket, from which it appears that he procured from the association three drafts, each to the order of a different oil company, aggregating the above amount, which was charged to his "escrow" account. Like the preceding count, no averment is made from which it appears how it is possible or probable that the bank will lose, nor

does it appear that the drafts were ever paid. Dow Case, supra; United States v. Martindale (D. C.) 146 Fed., loc. cit. 282.

[3] Taking up indictment No. 520, the first count of this indictment is unintelligible, as the mere reading of it shows, because of the confusion of the name of the defendant with that of the American National Bank of Bartlesville, and this confusion, occurring as it does at the beginning of the count, is carried through the entire count, by reference from time to time relating back to this defective beginning. For this reason, if no other, this count is subject to the motion to quash.

The second count charges that the defendant was president of the association, and that on October 13, 1908, while acting as such president, with intent to injure and defraud the association, and without its knowledge or consent. or that of its board of directors, he unlawfully, fraudulently, knowingly, willfully, and feloniously converted and appropriated to his own use, and to the use of the Oklahoma Investment Company, the moneys, funds, and credits of the association, in the sum of $500. by means of a certain customer's draft set out in the indictment. It is dated October 7, 1908, drawn by one R. M. Conway, to the order of the Farmers' State Bank, and is drawn upon the Oklahoma Investment Company. It is charged that upon this paper the defendant paid to himself, out of the moneys, funds, and credits of the association, the said sum, and that said payment was unlawful, in that the association was not then indebted to the investment company, had no account with it upon which such payment was due and payable, and that the repayment of the said sum was in no way secured; that the defendant had no right, title, or authority in and to such moneys, funds, and credits, all of which he then and there well knew. Now, while it does not appear how the defendant came in possession of the draft, it may reasonably be inferred from the indictment that he presented it to the association, and received it for the association, in exchange for the moneys, funds, and credits he is charged with having misapplied. The draft was originally payable to the order of the Farmers' State Bank. It is not charged that the defendant was wrongfully in possession of the paper, so that it must be assumed that he was entitled to present it to the Oklahoma Investment Company, upon whom it was drawn, and collect $500. But. instead of that, he passes it through the association, whether by indorsement, or for collection, or how, does not appear. It does appear that he received for it $500 of the moneys, funds, and credits of the association. Now, it is charged that this was unlawful, in that the association was not indebted to the Oklahoma Investment Company. and the repayment of said moneys, funds, and credits was not secured, and that the defendant was not entitled to the said moneys. funds, and credits. But as the bank holds the paper, which is in itself a credit against the Oklahoma Investment Company, and as it does not appear that the Oklahoma Investment Company was insolvent, and as no other reason appears why the paper is uncollectible, it must be assumed that upon presentation by the association to the Oklahoma Investment Company it will be paid. If, so, then it does not

appear that the bank loses anything by the transaction. It is not materially different from the defendant's having received for the bank and discounted the note of the Oklahoma Investment Company, and taken the proceeds himself. In such case, unless it appeared that the investment company was insolvent, or that for some other reason the paper was uncollectible, the mere charge that it was done by the defendant to injure and defraud the bank would not be sufficient to make criminal a state of facts which fails to show on its face that injury or fraud would probably result. United States v. Britton, supra.

[4] In the third court the defendant is charged with having misapplied $250 of the moneys, funds, and credits of the association, by means of a draft drawn by the Oklahoma Investment Company, by its treasurer, upon the associations payable to the order of J. W. Jenkins, agent. It is charged the Oklahoma Investment Company has no account with the association upon which the draft may be drawn, but no charge of insolvency is made against it. It amounts to no more than the permitting of an overdraft by the Oklahoma Investment Company. It is not charged that the Oklahoma Investment Company had no account with the association, but that it had no account upon which the amount was due and payable. There being no allegation from which it can be inferred that the association cannot or did not collect this overdraft from the Oklahoma Investment Company, which, so far as appears, was a solvent concern, no offense of misappropriation is stated.

The fourth count is very similar to the third, and is subject to the same criticisms.

The fifth count charges a misapplication by the defendant of $9,204.90 with intent to injure and defraud the association, and without the knowledge and consent of the board of directors, by means of a draft dated January 28, 1909, drawn by the defendant to the order of Columbia Bank & Trust Company upon the Oklahoma Investment Company, charged to have been unlawful, in that the investment company had no account with the association upon which said amount was due, and that the association did not owe said sum to the investment company. It is not alleged that the investment company was insolvent, nor that the draft was for any reason uncollectible. This count is therefore defective, for the reasons stated as to the second count of this indictment.

The sixth count sets forth a transaction involving a customer's draft, drawn by the Columbia Bank & Trust Company upon the Oklahoma Investment Company, to the order of the Southwestern Mortgage Company, for $3,087.50. It does not appear that the Oklahoma Investment Company is insolvent, or that the draft upon it was for any reason uncollectible.

The seventh count charges that on January 15, 1909, the defendant, as president of the association, with intent to injure and defraud it, and without the knowledge and consent of the board of directors, unlawfully, etc., misapplied and converted to the use and benefit of himself, one Davis, and the Columbia Bank & Trust Company moneys,

etc., of the association in the sum of $2,500, by means of certain checks, drafts, and charge tickets, a more particular description of which the grand jury is unable to give, and by further means and methods to the grand jury unknown; that this payment was unlawful, in that the association was not indebted to defendant, nor to the said Davis, nor the Columbia Bank & Trust Company, in any sum entitling them to such payment, and the repayment of said moneys, funds, and credits was in no way secured, all of which was known to the defendants. For the reasons set forth as to the foregoing counts, it will be seen the facts averred as constituting the means by which the alleged misapplication was effected do not amount to an unlawful misapplication under the statute. Nor do they apprise the defendant of the particular charge against him with such definiteness of detail as enables him to make a defense, or plead it in bar of another prosecution, in case of acquittal or conviction.

The eighth, ninth, and tenth counts of this indictment are substantially the same as the seventh in the manner in which the alleged misapplication is pleaded.

Taking up the charges in the fourth, and fifth counts of indictment No. 521: The fourth count charges that the defendant, as president of the association, on the 15th day of December, 1908, with intent to injure and defraud the association, and without the knowledge and consent of the board of directors, unlawfully, willfully, etc., abstracted and converted to his own use and to the use of the Bartlesville State Bank moneys, funds, and credits of the association in the sum of $4,000, by means of a certain charge ticket set forth in the indictment; that said sum was not lawfully paid, in that the association was not indebted to the Bartlesville Bank, and it had no funds on deposit with the association, and no valid subsisting account upon which the payment was due, or entitled to be paid; and it is then charged that the repayment of "said customer's draft" was not in any way secured, and that the defendant and the said bank had no right, title, or authority in and to said moneys, funds, and credits, all of which the defendant well knew. The reference to "said customer's draft" must be an error in drafting the indictment, for in no other place in this count is any customer's draft mentioned. It appears from this count that the defendant, without knowledge and consent of the board of directors, paid out of the moneys, funds, and credits of the association the sum of $4,000 to the Bartlesville Bank, which amount was charged to that bank, as shown by the charge ticket, and that no security was given for the repayment of this money, other than the credit of the Bartlesville Bank; but in place of such moneys, funds, and credits the association has a charge against the Bartlesville Bank for the same amount. If the latter bank was solvent, as must be presumed in the absence of an allegation to the contrary, then the association can lose nothing by reason of the transaction; for it must be presumed that a solvent bank will repay this amount when called upon, whether it be treated as a loan or an overdraft. As it is neither charged that the Bartlesville Bank is insolvent nor that this indebtedness to the association was not re-

paid upon demand, all the facts charged in the indictment might be admitted or proven, and still there would be nothing from which the jury could infer the unlawful intent charged.

In the fifth count it is charged that on December 9, 1908, the defendant, as president of the association, with the intent to injure and defraud it, and without the consent and knowledge of the board of directors, willfully and unlawfully abstracted and converted to the use of himself and the Bartlesville State Bank moneys, funds, and credits of the association, in the sum of $9,000, by means of a customer's draft, drawn by the cashier of the latter bank, payable on demand to the order of the association, said moneys, funds, and credits having been paid to the latter bank by the association upon said draft; that the payment was unlawful, in that the association was not indebted to the said bank; that it had no funds on deposit with the association, and no valid subsisting account with the association upon which said payment was due, and the repayment thereof was not secured. From this it appears that for the said moneys, funds, and credits the association held the demand draft of the Bartlesville Bank for the same amount. No insolvency of the latter bank is charged, so it was presumably solvent. Nor is it charged that upon demand the draft was not paid. So that, presumably, it was; it not appearing that the amount was lost to the bank. For reasons stated as to other counts, this count fails to state a case of unlawful abstraction, as contemplated by the statute.

As to all the false entry counts in the several indictments, the motions to quash will be sustained, because said counts are duplicitous; each combining in one count two distinct offenses.

The several motions to quash, so far as they relate to counts in the respective indictments charging misappropriation, will be sustained, for the reasons heretofore stated, except as to the third count of indictment No. 516, as to which count the motion will be overruled. So far as they relate to the counts charging abstraction, the said motions will be sustained.

So ordered.